MARY E. STIMETS *v.* TOWN OF HIGHGATE ET AL.

January Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed May 16, 1908.

*Railroad Crossings—Elimination—No. 125, Acts 1906—Construction—Jurisdiction of Railroad Commissioners—Taking of Necessary Land by Railroad Company—By Town—Procedure—Due Process of Law—Remedy of Landowner.*

Under §1, No. 125, Acts 1906, relating to the alteration of railroad crossings, the Board of Railroad Commissioners on proper petition have jurisdiction to determine what changes and removals shall be made, and to apportion the expense thereof, including land damages, but that section gives them no authority to take necessary land, or to appraise the damages for such taking.

Where on petition of selectmen, under No. 125, Acts 1906, the Board of Railroad Commissioners order railroad crossings to be eliminated by a new public highway to be constructed by the town, they have no authority to order such highway to be constructed along any particular route, but only to adjudge whether the taking of land is necessary for such elimination, leaving the route of the highway to the selectmen, who alone have authority to fix its location.

Where the selectmen in their petition under that act described a particular route, and the Railroad Commissioners adopted it in their order, without objection, the fact that the commissioners exceeded their authority in this respect was not material on a landowner's petition to the county court, in the nature of an appeal from the selectmen's award of damages, for the appointment of commissioners to assess the same.

Under §4, No. 125, Acts 1906, the Railroad Commissioners take the place, certainly in respect of the appraisal of damages, of the commissioners provided for by V. S. 3814, and due process of law is thereby provided for taking land by the railroad corporation in fulfilment of the order of the Railroad Commissioners; but, as the act has no such provision where it is necessary for the town to

take land for a new highway in fulfilment of such order, it must be taken that the Legislature intended that, in such case, the town should proceed under the general law provided for laying out highways.

Selectmen of a town, in a proceeding under No. 125, Acts 1906, having obtained the judgment of the Railroad Commissioners that certain railroad crossings were dangerous, and an order to take such lands as were necessary to eliminate them by the construction of a connecting section of public highway, together with an order apportioning the expense, properly proceeded, within the scope of the Commissioners' order, to lay out such highway and to assess the damages as they would have done had they acted on their own motion, or on the petition of three freeholders, in laying out a highway under the statute.

PETITION by a landowner, under V. S. 3314, for the appointment of commissioners to assess damages for land taken by selectmen for a highway that the Board of Railroad Commissioners ordered the town to construct for the purpose of eliminating certain railroad crossings. Heard on motion to dismiss the petition for want of jurisdiction, at the September Term, 1907, Franklin County, *Miles,* J., presiding. Petition dismissed. The petitioner excepted. The opinion states the case.

*Furman & Webster* for the petitioner.

*Harry Blodgett* for the defendant.

TYLER, J. The selectmen of Highgate, under the provisions of section one, No. 125, laws of 1906, preferred their petition to the railroad commissioners, alleging that two certain highways crossed at grade the St. Johnsbury & Lake Champlain railroad, in that town, at described points; that said crossings were dangerous; that it was feasible to construct a section of highway upon the northerly side of the railroad—describing the same by metes and bounds; that it could be constructed at reasonable expense; that the public safety required the discontinuance of parts of the existing highway between certain described points, including said crossings, and the construction of said new section. They prayed the railroad commissioners to notify all land-

owners through whose lands the section of new highway would pass—naming them—and the Attorney General, to appear before said commissioners at a place and time that they should name, and, upon hearing, that they would order the discontinuance of parts of the existing highway between the points described and order the abolishing of the grade crossings and the construction and substitution of a section of highway as described; that they would determine the amount that the landowners ought reasonably to receive on account of the taking and appropriating of their lands and apportion the damages and expense of construction among the proper parties; that they would "award for the taking of the lands in accordance with the provisions of the statute in such case made and provided, and make such further orders * * * in the premises as to your board shall seem meet."

The commissioners acted upon the petition, gave notice to and heard all parties interested, found from the evidence and personal inspection that the crossings were dangerous, and that the public safety required their elimination by the construction of a connecting section of highway as described in the petition. They ordered that:

"For the purpose indicated in the foregoing report the town of Highgate is hereby ordered to lay out and construct in that town, on the north side of its main line, the connecting section of public highway described as follows." Then follows a description of the section as set forth in the petition. They fixed the time when the section of highway should be completed and opened for public travel, and ordered that when opened said crossings should be forever discontinued. They apportioned the expense of fulfilling their order among the railroad company, the state and defendant town, but they did not assess nor order the assessment of the plaintiff's or other landowners' damages.

It appears that upon receiving the order from the commissioners the selectmen of Highgate gave the plaintiff written notice of the place and time when they would hear her upon the question of damages, setting out in the notice that the commissioners, acting upon the selectmen's petition, "did order and decree that the highway in said town, * * * described in the petition, and the railroad crossings described therein, * * * be discontinued and abolished, and did order and decree that a

new highway be surveyed and laid out in lieu thereof as follows," describing it in the notice in which they further said that at the place and time named they would examine the premises, determine the plaintiff's damages and pay or tender her the amount.

The plaintiff, by her agent, appeared before the selectmen, was heard upon the question of damages, and the selectmen examined the land, and not being able to agree with her, fixed her damages at $200 and tendered her the amount.

The plaintiff appealed to the county court for the appointment of commissioners to reassess her damages, making the railroad company, the state and the town of Highgate parties defendants.

In the county court the railroad company moved to dismiss the appeal, and the motion was granted. The ground of the motion was that that court had not jurisdiction of the case, and, consequently, that it had not authority to appoint commissioners,—that the plaintiff's only right of appeal was to the court of chancery.

The first section of the Act of 1906 does not make it clear whether the railroad commissioners, upon granting the petition of selectmen, are themselves to assess the damages to landowners, or are only to prescribe a rule of apportionment to be applied when all the damages and expenses have been ascertained. This section requires them, after hearing, to determine what alterations, changes or removals, if any, shall be made and by whom, and to apportion the expense, including the damages to any person whose land is taken and the special damages which the owner of land adjoining the public highway shall sustain by reason of the change of grade of such highway, among the state, the town and the railroad company, and a rule of apportionment is laid down in this section of the act.

Under section 1 of the act either the selectmen of the town or the directors of the railroad company may petition the railroad commissioners for alterations or removals of highway crossings at grade. In this case the selectmen, to accomplish the abolition of such crossings, might, on the petition of three or more freeholders, or of their own motion, have taken and surveyed land and constructed a connecting section of highway over it, at the expense of their town. But, by the provision of the act,

if they could obtain from the railroad commissioners an adjudication that the crossings were dangerous, then not more than ten per cent. of the entire expense, including land damages and the cost of constructing the highway, would fall upon the town. Such an adjudication was obtained, also an order to take land necessary to accomplish the purpose with an order apportioning the expense.

In granting the order for taking land it was not within the scope of the authority of the commissioners to order a highway to be laid over a particular route. Their authority extended no further than to adjudge whether the taking of land was necessary for the elimination of the crossings, leaving the route of the highway to the selectmen who alone had authority to fix its location. In this case the selectmen, in their petition, described a particular route, and the commissioners adopted it in their order; but neither the plaintiff nor any other person interested objected to the location, therefore the fact that the commissioners exceeded their authority in this respect is not material in this consideration.

It was strictly within the commissioners' authority to determine what changes and removals should be made and to apportion the expense thereof, including land damages, but section 1 gives them no authority to take necessary land nor to appraise the damages for land taken.

Section 2 authorizes alterations at the primary instance of the commissioners, on hearing and notice, but in that case no part of the expense can be charged to the town.

Section 4 authorizes railroad companies to take land necessary for the purposes of the act by causing the same to be surveyed and furnishing a copy of the survey to the owner or agent of the land, whereupon, if the owner and the corporation cannot agree upon the price of the land, either may apply to the commissioners, who, after due notice and hearing, shall first adjudge whether the taking of the land is necessary. If they decide that it is, then they shall appraise the same and cause the railroad company's survey and their decision to be recorded in the town clerk's office in the town where the land is situated. This section further provides that so much of the provision of sections 3817, 3819 and 3820 of Vermont Statutes as are not inconsistent with the provisions of the section nor with any of the

other provisions of the act, shall be followed by the commissioners and the railroad corporation. These sections are a part of the general law for the appraisal of damages for land taken for the construction and operation of railroads. Section 3819 specially provides that on payment or tender and deposit of the damages allowed, the railroad company shall be deemed to be seized and possessed of the land appraised.

So it appears that under section 4 the railroad commissioners take the place, certainly in respect to the appraisal of damages, of the commissioners provided for by V. S. 3814, and this completes the process of taking land under this act, when the taking is by the railroad corporation, and constitutes due process of law, for every one is given an opportunity to be heard on all questions in which they are interested.

It is significant that the act of 1906 provides complete machinery for the taking of land by a railroad company and omits such provision when the taking is by the town. We think it can be accounted for only on the ground that the Legislature intended that the town should use the machinery already provided for laying out highways. That machinery is complete for all purposes under this act when the town takes the land; but the machinery of the general railroad law is not complete under this act when the corporation takes, for the railroad commissioners are to determine the necessity for taking and to appraise the land, and therefore it was necessary to take enough of the general law to make up the deficiency.

Section 6 of this act gives an appeal to the court of chancery, but section 10, No. 126, Acts of 1906, passed subsequent to No. 125, gives appeal to the Supreme Court.

By this construction the question whether the railroad commissioners may assess the damages for land taken by the town is disposed of. As we have shown, such authority is not conferred upon them by the terms of the act. That only gives them authority to apportion the expense among the state, the town and the railroad company. The construction of the highway might not be completed for a long time, while the act evidently contemplates perfected orders by the commissioners at the time of the hearing by them.

The selectmen, having thus obtained the judgment of the commissioners that the crossings were dangerous, with an order

to take such lands as were necessary to effectuate the abolition of the crossings and the order of apportionment having been made, they properly proceeded to lay the highway, within the scope of the commissioners' order, and to assess the damages as they would have done on the petition of three freeholders or if they had acted upon their own motion. The order of the commissioners necessitated their taking land so as to abolish the crossings, which was the ultimate object of the order. The selectmen took the land and determined the particular route of the highway. Thus they decided the question of the necessity for taking the particular land and the question of damages.

*Judgment reversed and cause remanded.*