MAYOR AND ALDERMEN OF WALTHAM, petitioners.

Middlesex.   December 1, 1909. — June 24, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Grade Crossing Acts. Railroad. Practice, Civil,* Report of commission under grade crossing act.

By St. 1906, c. 463, Part I. § 34, the jurisdiction of a commission appointed by the Superior Court under § 29 of the same chapter to decide whether public security and convenience require the abolition of a grade crossing of a railroad with a public way and to prescribe the manner and limits of such change, is confined to matters relating to the abolition of the crossing or crossings which the commission are appointed to consider, and they have no authority to provide for the general improvement of the public ways in the neighborhood or to provide increased facilities for the transaction by the railroad company of its business by means of additional tracks and structures, except so far as general improvements of public ways in the neighborhood or increased facilities for the transaction by the railroad company of its business are the result of or are incidental to the separation of the grades at the crossing or crossings in question.

Under St. 1906, c. 463, Part I. § 34, where a commission has been appointed by the Superior Court to decide whether the public security and convenience require the abolition of certain grade crossings of a railroad with public ways and to prescribe the manner and limits of such change, and where it appears that the principal station of the railroad company is in the section of the railroad in which the crossings are to be abolished, that a branch railroad joins the main line there, that extensive changes in the immediate locality have been made necessary and have been ordered in consequence of the abolition of the grade crossings, that the place is the centre of a city and is one where numerous trains stop and pass and are made up and arrive and depart, this court will not say that the commission are not warranted in directing that, as a part of or as incidental to the changes made necessary by the abolition of the grade crossings, the roadbed should be widened so as to accommodate a fourth track in addition to three already existing at the place where the grade crossings were abolished, not for the purpose of four-tracking the railroad or of meeting future needs, but for the purpose of meeting a situation arising out of the abolition of the grade crossings.

Under St. 1906, c. 463, Part I. § 34, a commission appointed by the Superior Court to decide whether the public security and convenience require the abolition of certain grade crossings of a railroad with public ways and to prescribe the manner and limits of such change, have no jurisdiction to order that, for more than one half the distance included in the proposed change, the roadbed of the railroad shall be widened so as to accommodate four tracks where before there were only two, if their only reason for making such an order is that "in the near future the requirements of traffic will make it reasonably necessary to provide four tracks on the main line" to a certain city and beyond.

Where a commission appointed by the Superior Court under St. 1906, c. 463, Part I. §§ 29, 34, to decide whether the public security and convenience require the abolition of certain grade crossings of a railroad with public ways and to prescribe

the manner and limits of such change, have made a report which includes an order, which is beyond the jurisdiction of the commission, that a portion of the roadbed of the railroad where there are only two tracks shall be graded to a width sufficient for four tracks on the ground that four tracks will be required in the near future by the traffic conditions on the railroad, if this order of the commission constitutes an integral part of the report and of the scheme or plan which the commissioners have devised for the abolition of the crossings and therefore cannot be separated from the rest of the report, the whole report must be set aside, and a decree of the Superior Court confirming it must be reversed.

MORTON, J.   This is a petition under R. L. c. 111, as amended by St. 1902, c. 440, for the abolition of certain grade crossings of the Fitchburg Railroad in the city of Waltham.   Pending the petition St. 1906, c. 463, was enacted.   Commissioners were duly appointed by the Superior Court and after due hearing made a report which provided amongst other things that " The roadbed of the Fitchburg Railroad shall be graded to a width sufficient for four tracks within the limits of the change, and the existing culverts and drains shall be extended or changed to conform to the new conditions."   The commissioners also provided .for the building of certain stone bridges and abutments of a width sufficient to accommodate four tracks.   The Commonwealth and the Newton Street Railway Company objected to the report on the ground that the commissioners had no jurisdiction to provide a roadbed for four tracks throughout the entire limits of the proposed change, and on motion of the street railway company the report was recommitted with directions to the commissioners to report fully and specifically all facts bearing on the question of the relative difficulty and expense of making a four track railroad throughout the limits of the proposed change in respect (1) to the existing situation, (2) the situation which would exist if the roadbed were raised and graded for four tracks as provided in the report, and (3) the situation which would exist if the roadbed were raised and graded as provided in all other respects but only of sufficient width for the existing number of tracks.   Upon the coming in of the supplementary report the Commonwealth and the street railway company renewed their objections to the jurisdiction of the commissioners in respect to the widening of the roadbed for four tracks.   Their objections were overruled and a final decree was entered * that the

* By order of *Richardson*, J.

report "be and the same hereby is in all respects approved and confirmed." The Commonwealth and the street railway company appealed.

It appeared that within the limits of the proposed alterations there were for a portion of the distance, twenty-nine per cent of it, four tracks, for another portion, fifteen per cent, three tracks, and for the rest of the distance, fifty-six per cent, two tracks; that the railroad had four tracks for portions of the distance both east and west of the proposed changes, and that rights of way had been secured and all structures, except one or two overhead bridges, had been arranged for four tracks. It also appeared that in the abolition of grade crossings in the neighboring town of Belmont, between Waltham and Boston, the decree provided that the railroad should be graded and a stone bridge built wide enough for four tracks, and that that had been done. It further appeared that the estimated cost of providing for four tracks at the levels and grades determined by the commissioners would be $45,550 more than for the existing number of tracks at such levels and grades, or about five per cent on the total estimated cost of the whole improvement, though, owing to the character of the construction that would be required it would be less than the cost of providing for four tracks at the present levels and grades. The Commonwealth is to pay fifteen per cent of the cost of eliminating the crossings at Main and Moody Streets, and twenty-five per cent of the remainder, and the street railway company is to pay ten per cent of the cost of altering the Main Street and Moody Street crossings and nothing as to the rest. The railroad company is to pay sixty-five per cent of the total cost and the city of Waltham ten per cent of it.

The commissioners found and reported that "in the near future the requirements of traffic will make it reasonably necessary to provide four tracks on the main line to Waltham and beyond," and that it appeared to them that "if they have jurisdiction to provide for any traffic development upon the railroad, it was reasonable and proper to provide for four tracks throughout the limits of the change. It did not seem to them proper to provide merely for the existing tracks, for this would have provided for grading for two tracks along part of the distance, for

three tracks along another part, and for four tracks along another part. The commissioners provided for four tracks throughout because they believed that such was the proper plan to be adopted; considering that — as they would have the power [to provide] in relocating a street to make it wider if the present or future demands of traffic seemed to render such widening desirable, as is frequently done in abolishing grade crossings — there was equal reason for providing for four tracks upon the railroad if the reasonable requirements of future traffic appeared to make such an increase of capacity desirable."

The question is whether the commissioners had jurisdiction to provide for the widening of the roadbed so that it should be sufficient for four tracks throughout the limits of the proposed change. The reasons given by them for doing as they did and the facts found by them show that it will be to the advantage of the railroad company to have the roadbed widened so as to accommodate four tracks, and that prudent business management would seem to require that the work of widening should be done in connection with and as part of the abolition of the grade crossings. But that is far from establishing the proposition that the commissioners had jurisdiction to order it to be done as a part of the plan for abolishing the crossings. The statute provides that if the commission decides that public convenience and security require that an alteration shall be made in the crossing, " it shall prescribe the manner and limits thereof " (St. 1906, c. 463, Part I. § 34), and " shall specify what part, if any, of an existing public or private way shall be discontinued, the grade for the railroad and the way, the changes to be made in the location and grades of the street railway in such public way, the general method of construction and what land or other property it considers necessary to be taken "; and it may provide for the taking of an easement in adjoining land to protect the location by means of a proper slope (*ibid.*, § 36). Manifestly the jurisdiction of the commission is limited to matters relating to the abolition of the crossing or crossings which it is appointed to consider. Beyond that it has no authority to go. It has no authority to provide for the general improvement of the public ways in the neighborhood or to provide increased facilities as such for the transaction of its business by the railroad by means

of additional tracks and structures. So far as a general improvement of public ways in the neighborhood or increased facilities for the transaction of its business by the railroad is the result of or is incidental to the abolition of the crossing or crossings, they are advantages to which the public and the railroad are respectively entitled. Whatever is reasonably necessary and proper to be done in order to abolish a crossing, or fairly may be regarded as incidental thereto, comes within the jurisdiction of the commission. And this applies not only to the manner in which the work shall be done but to the scheme or plan adopted for the abolition of the crossing or crossings as a whole. In passing upon what is reasonably necessary or fairly may be regarded as incidental, every reasonable presumption is to be made in favor of the conclusions to which the commission has come. Presumably they will have taken a view, as they did in this case, and thus will have become familiar with the crossing or crossings and the surrounding conditions. And the statute is to be construed not with technical strictness but in a manner which will promote the ends which it was intended to accomplish, namely, the public safety and convenience. See *Davis* v. *County Commissioners*, 153 Mass. 218; *Norwood* v. *New York & New England Railroad*, 161 Mass. 259; *Mayor & Aldermen of Newton, petitioners*, 172 Mass. 5; *Selectmen of Westborough, petitioners*, 184 Mass. 107.

Applying these principles to the case before us we hesitate to say that the commission was not warranted in directing that as a part of or incidental to the changes rendered necessary by the abolition of the crossings the roadbed should be widened so as to accommodate another track in addition to the three already existing where the crossings were. It appears that the principal station is in this section and that the Watertown branch joins the main line there; that extensive changes in this immediate locality have been rendered necessary and have been ordered in consequence of the abolition of the crossings; and that the place is in the centre of the city and is one where numerous trains stop and pass, and are made up and arrive and depart. In view of all these circumstances we cannot say, as already observed, that the commission was not warranted in directing the roadbed to be widened so as to accommodate another track at this point,

not for the purpose of four-tracking the railroad or of meeting future needs, but for the purpose of meeting a situation arising out of the abolition of the crossings themselves.

But we are unable to discover any ground on which the jurisdiction of the commission to order that the roadbed be widened so as to accommodate four tracks where there are now only two, can be sustained. The distance thus covered is more than one half of the entire distance included within the limits of the proposed change, and the only reason given by the commission for its action is that " in the near future the requirements of traffic will make it reasonably necessary to provide four tracks on the main line to Waltham and beyond." In other words, what the commission has done along this part of the line is, it seems to us, to order a general improvement for the benefit of the railroad corporation at the expense of the other parties interested because it will be required in the near future by traffic conditions on the railroad. If there was or was likely to be an increase of traffic over the railroad in consequence of the separation of the grades, it would be reasonable for the commission to make some provision therefor. But there is no finding to that effect, and such a result is almost inconceivable. It does not come within the scope of the powers of the commission to provide for a natural increase of traffic over the railroad or over the public ways, resulting from general business conditions and the growth and development of the neighborhood and of the country. Those are matters which must be dealt with in other ways. The commission is not required however to reproduce or restore the exact conditions which existed before the change of grade, either in regard to the railroad or the public ways. *Norwood* v. *New York & New England Railroad, supra. Mayor & Aldermen of Newton, petitioners, supra.* When, for instance, two highways are united, or when inadequate, inconvenient and dangerous ways are relocated, they should be constructed so as to be safe, adequate and convenient under the new conditions. So when the railroad has to be altered or relocated, the station may be removed and another one built at another place, and new tracks and therefore better may be laid, and increased accommodations provided so far as reasonably necessary to or properly incident to the separation of the grades at the crossing which is abolished. *Mayor & Al-*

*dermen of Newton, petitioners, supra.* But neither the Commonwealth nor the railroad company, nor the cities and towns, nor any other party interested, can be properly required to contribute to the expense of improvements which are not fairly due to the elimination of the crossing or crossings, but are intended to provide for the future growth and welfare of the community or the railroad.

The railroad company contends that it is entitled to be put in as good a position relatively as it was before, and that inasmuch as the roadbed for the two tracks is practically on a level with the adjoining land the new roadbed should be constructed so that additional tracks may be laid with equal facility. But the railroad company can properly require that to be done only so far as incidental to or rendered reasonably necessary by the abolition of the crossings. And the widening of the roadbed so as to accommodate four tracks where there are now only two cannot, we think, properly be considered as incidental to or as rendered necessary by the abolition of the crossings. Under such circumstances there can be no hardship or unfairness in requiring the railroad company to adapt its roadbed at its own expense to its future needs.

If that portion of the report directing that the roadbed shall be graded to a width sufficient for four tracks could be separated from the rest of the report and could be still further divided or construed so as to render it applicable to that portion of the roadbed where there are only two tracks, all that it would be necessary to do would be to set aside so much of the report as required the roadbed to be graded to a width sufficient for four tracks where there are now only two. But it seems to us that the direction as to four tracks constitutes an integral part of the report and of the scheme or plan which the commissioners have devised for the abolition of the crossings and cannot therefore be separated from the rest of the report. It follows that since the commissioners had no jurisdiction to order the railroad to be graded to a width sufficient for four tracks throughout the limits of the proposed change, the decree affirming and confirming the report was erroneous and must be reversed and the report set aside.

*So ordered.*

*A. A. Ballantine,* for the Newton Street Railway Company.

*D. Malone,* Attorney General, *& F. B. Greenhalge,* Assistant Attorney General, for the Commonwealth.

*W. H. Coolidge & G. S. Selfridge,* for the Boston and Maine Railroad and the Fitchburg Railroad Company.

*W. S. Slocum,* for the petitioners.