THEODULE BESSETTE *v.* C. C. GODDARD.

May Term, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed August 22, 1913.

*Public Service Commission—Nature and Functions—Jurisdiction—Elimination of Grade Crossing—Discontinuance of Highway—Jurisdictional Facts—Validity of Order—Collateral Attack.*

The Public Service Commission is an administrative body, authorized, in the exercise of the police power, to make rules and regulations required for the public safety and convenience, and to determine facts on which existing laws shall operate.

The Public Service Commission is a tribunal with special and limited statutory powers, not according to the course of the common law, and so nothing will be presumed in favor of its jurisdiction, but the facts necessary to confer it must affirmatively appear, and the exercise of jurisdiction does not imply a previous ascertainment of those facts.

Although the Public Service Commission is given extensive jurisdiction in respect of eliminating railroad-highway crossings at grade, it has power to do in that regard only what is reasonably necessary to accomplish the elimination, or what is fairly incident thereto.

In a proceeding for the elimination of designated railroad-highway crossings at grade, an order of the Public Service Commission directing such elimination by the practical discontinuance of about a mile of the highway and diverting the travel to another highway was without jurisdiction, where the Commission made no finding showing the necessity of that discontinuance, and gave no reason why the highway could not be relocated so as to eliminate the crossings; and the order is subject to collateral attack for that reason even by one who was a party to the proceeding in which the order was made.

A court of equity has jurisdiction, at the instance of a property owner, to restrain the enforcement of an order of the Public Service Commission, made without jurisdiction, for the elimination of desig-

nated grade crossings, where the bill alleges that the order will be obeyed, unless its enforcement is restrained, and that its enforcement will result in the discontinuance of the highway past orator's farm and cause him irreparable injury that money could not compensate; and equity is the only adequate remedy, as *certiorari* could not stay the execution of the order.

APPEAL IN CHANCERY, Lamoille County. Heard at chambers, November 22, 1911, on demurrer to bill, *Taylor,* Chancellor. Demurrer sustained, *pro forma,* bill adjudged insufficient and dismissed with costs. The orator appealed.

This is a suit in chancery to restrain the town of Hyde Park, its selectmen, and the St. Johnsbury & Lake Champlain Railroad Co., from executing an order of the Public Service Commission requiring the elimination of certain public highway crossings at grade on the "River Road" in said town, and an alteration of that section of said road by substituting therefor a portion of another existing highway in said town.

The bill alleges that the orator is the owner of a large farm on the "River Road," which is the only feasible route from his farm to the village of Morrisville on the east, the village of Johnson on the west, and to the railroad station and the sawmill in said town, "on account of a very long and steep hill on the other highway by which said farm is accessible"; that the "River Road" is, and for many years has been, the main highway from Johnson, Cambridge, Waterville, and Belvidere, in Lamoille County, and other towns westerly, to the village of Morrisville, the leading business center in said county, and to Stowe, Waterbury, and Montpelier southeasterly, and Hardwick and St. Johnsbury easterly; that because of the large amount of travel on the "River Road," and because of its being the only feasible route from the orator's farm to the places mentioned, the value of said farm is very greatly enhanced thereby, and its discontinuance as proposed would greatly depreciate its value, and make it an undesirable place to live; that the orator has a large amount of timber on said farm, and each winter engages in cutting the same and drawing it to the sawmill near the railroad station, and will be so engaged for a number of years to come; that said mill is now accessible by an easy and short route of not more than half a mile over the "River Road," but that if said road is discontinued as proposed, the orator would

be compelled to haul all of his timber and lumber to said mill by a route more than a mile long and up a long and steep sandy hill, thence through the village of Hyde Park, and down a long, steep hill to said mill, and that all of his manufactured lumber needed for use on his farm would have to be hauled back by the same difficult and circuitous route, all of which would be of great damage to him; and that beginning a little west of the railroad station, the railroad runs parallel to the "River Road" for about half a mile to a point a little west of the orator's farm, within which distance said road crosses the track four times at grade.

The bill further alleges that in April, 1910, the selectmen of Hyde Park brought their petition to said Commission, alleging that there are four railroad highway crossings at grade in said town in a distance of about a mile on the "River Road," which distance extends from near said station, northerly and westerly, past the dwelling house of John Ladeau and of the orator to the intersection of said road with the public highway leading to and from the village of Hyde Park; that public safety requires that said grade crossings be eliminated by improving, reconstructing, and repairing a section of said last-mentioned highway from its intersection with the "River Road" to the village of Hyde Park, a distance of about 4,000 feet, which it is feasible to do, and discontinuing and abandoning said grade crossings and diverting the travel through said village over said improved section of highway, and praying that said crossings be so eliminated.

The bill shows that the orator was notified and appeared in person at the hearing, and that from the evidence and personal inspection the Commission found the allegations of the petition of the selectmen in respect of grade crossings to be true; that said crossings were among the most dangerous on the railroad; and that public safety required that two of them be eliminated as suggested in the petition and as indicated in its order, which required the town of Hyde Park to expend not exceeding $4,500 in improving as therein directed, said section of highway leading to the village of Hyde Park, and to pay all damage legally incident thereto, and that upon the completion of said work, the second of said crossings, computing from the east, be forever thereafter discontinued and abandoned as such, and fenced and barred against public travel; that the most westerly of said

crossings be forever discontinued and abandoned as a public highway crossing, but be maintained as a farm crossing for the accommodation of the orator's farm, and that the other two crossings be maintained as they are for the accommodation of Ladeau's farm and the orator's farm; and that all the expense properly incurred in executing the order and paying land damages be apportioned as stated among the State, the town, and the Railroad Company.

The bill alleges that the elimination of the second crossings as aforesaid, if allowed, would effectuate discontinuance of that section of the "River Road," and cause irreparable damage to the orator and his farm; that the order is void for want of authority in the Commission to make it; that both the town and the Railroad Company will obey it unless restrained, and that the orator will suffer thereby as a taxpayer of the town as well as in inconvenience and the lessened value of his farm.

The bill is demurred to for want of equity, and for that the Commission had full jurisdiction to make the order, and the orator an adequate remedy by appeal; that the orator is concluded by the order, it not having been appealed from, and the court of chancery without jurisdiction to interfere with it; that the orator has an adequate remedy at law by application to the Commission to assess his damages; that the selectmen of Hyde Park have full jurisdiction of the highways in the town, which should not be interfered with by the court of chancery; that the orator has an adequate remedy at law for the correction of any and all errors in the order if any there are, unless he has lost the same by his own laches.

*T. C. Cheney* and *M. P. Maurice* for the orator.

The Public Service Commission has no authority wholly to discontinue a highway in order to improve a grade crossing. *Blake et al.* v. *Concord & M. R. R. et al.,* 64 Atl. 202; *Leighton* v. *Railroad,* 72 N. H. 224; *Selectmen of Norwood* v. *N. Y. & N. E. R. R. Co.,* 161 Mass. 259; *In re Mayor and Aldermen of Waltham,* 92 N. E. 477; *Davis* v. *County Com.,* 153 Mass. 218; 33 Cyc. 297; *English* v. *Smock,* 34 Ind. 115, 7 Am. Rep. 215; *Green etc.* v. *Beeson,* 31 Ind. 7.

The orator is a taxpayer, and as such may maintain this action to restrain the enforcement of this order. *Berry* v. *Goad,*

89 Cal. 215; *Anderson* v. *Orient Fire Ins. Co.*, 88 Iowa 579; *Crampton* v. *Zabriskie*, 101 U. S. 601; *Black et al.* v. *Ross et al.*, 37 Mo. App. 250; *Littler* v. *Jayne et al.*, 124 Ill. 124; *Kercher* v. *Peterson*, 117 Wis. 68; *Commissioners of Highways* v. *Deboe*, 43 Ill. App. 25; *Farmer* v. *City of St. Paul*, 65 Minn. 176.

*W. B. C. Stickney, R. W. Hulburd* and *Harry Blodgett* for defendants.

That it appears by the bill of complaint that the orator has a full and complete remedy at law for the correction of any and all errors in the orders of said Commission as set forth, if any such there be, unless he has lost the same by his own laches. *Pennsylvania R. Co.* v. *National Docks etc. Co.*, 56 Fed. 697; *Grimes* v. *Thompson*, 7 Wall. 347; *State* v. *Medical Society*, 35 N. J. L. 200; *Vanmuckle* v. *Railroad Co.*, 14 N. J. L. 162; *State* v. *Lane*, 26 N. J. L. 140; *Swayze* v. *Railroad Co.*, 36 N. J. L. 295; *Lehigh Valley R. Co.* v. *Dover etc. Co.*, 43 N. J. L. 528; *Hoagland* v. *Township of Delaware*, 17 N. J. Eq. 106; *Hoboken Land etc.* v. *City of Hoboken*, 31 N. J. Eq. 461; *Erwing* v. *City of St. Louis*, 5 Wall. 413; *Pittsburg etc. Ry.* v. *Board of Public Works*, 172 U. S. 32; *Jackson* v. *Mayor*, 53 N. J. Eq. 322; *Beckwith* v. *Houghton*, 11 Vt. 602; *Woodstock* v. *Gallup*, 28 Vt. 587; *Londonderry* v. *Babbitt*, 54 Vt. 455; *Pomfret* v. *Hartford*, 42 Vt. 134; Dillon, Mun. Corp. (4th ed.) §§906, 922, 925-929.

ROWELL, C. J.　This case was heard at the May Term, 1912, and held for consideration. At a Special Term in December of that year, the case of *Sabre* v. *The Rutland R. R. Co.* 86 Vt. 347, was heard, and decided in January. In that case it became and was necessary to decide whether the Public Service Commission is a legal body, and if so, to define its nature and character as such. The Court met that necessity, and decided that it is a legal body, and defined it as being an administrative body clothed in some respects with functions of a judicial nature— *quasi* judicial functions the Court said they might be called, authorized in the exercise of the police power to make rules and regulations required for the public safety and convenience, and to determine facts on which existing laws shall operate; that in a sense it has auxiliary or subordinate delegable legislative powers; and that, though it is not a court in a strict sense,

6

yet, like many administrative bodies, it may exercise *quasi* judicial functions, and is a governmental agency provided for the administration in respect to certain specific matters, of what, in a broad though true sense, may be called the police power. This practically puts the Commission where the Federal Supreme Court puts the Interstate Commerce Commission, between which and our Commission there is much similarity in purpose and function.

Such being the character of our Commission, it must be classed with other bodies exercising special and limited statutory powers not according to the course of the common law, as to which nothing will be presumed in favor of their jurisdiction, but the facts necessary to confer it must affirmatively appear, and the exercise of jurisdiction does not imply a previous ascertainment of those facts. *Kent* v. *Village of Enosburg Falls,* 71 Vt. 255; *Blanchard* v. *City of Barre,* 77 Vt. 420; *Barber* v. *Vinton,* 82 Vt. 327.

And although the Commission is given an extensive jurisdiction in respect of eliminating highway grade crossings, yet it can do in that behalf only what is reasonably necessary to be done in order to accomplish the elimination, or what may fairly be regarded as incident thereto. *Bacon* v. *Boston & Maine R. R. Co.* 83 Vt. 421, 441.

So in *Davis* v. *County Commissioners,* 153 Mass. 218, under a statute much like ours, the court said that though it was not easy to determine within what limits a change of this kind must be confined, yet that it might be said in general terms that under the guise of doing away with a grade crossing, the authority of the commissioners would not extend further than to do what was reasonably necessary to accomplish the purpose, in view of the situation of the ground and other circumstances.

It is requisite, therefore, that this necessity should affirmatively appear. But it does not, for the finding of facts by the Commission is set out in the bill in its very words, and contains no such finding, and gives no reason why the eliminations could not be made by changing the location of the River Road along the valley, instead of practically discontinuing it for a mile, and diverting the travel over the hill through the village, a roundabout way at best.

The lack of this jurisdictional fact is fatal to the order, and the orator can attack it collaterally for that reason, though

a party to the proceeding in which it was made. *Alexander* v. *Montpelier,* 81 Vt. 549.

But the defendants claim that equity has no jurisdiction here, and rely on *Ewing* v. *City of St. Louis,* 5 Wall. 413, to show it. But it does not show it. It shows the contrary. This is what it says: that equity will not take cognizance of the proceedings and determinations of inferior boards and tribunals of special jurisdiction unless, among other things, it is necessary to prevent irreparable injury; and here is irreparable injury, for the bill sets up as true a state of things that shows that the execution of the order would cause an injury to the orator and his farm so peculiar in nature that money would not compensate for it. And it is alleged that the order will be obeyed unless its execution is restrained. Equity, therefore, has jurisdiction, and is the only adequate remedy, as *certiorari* could not stay the execution of the order.

*Decree reversed, demurrer overruled, bill adjudged sufficient, and cause remanded with mandate that the execution of the order be perpetually enjoined, unless for cause shown, further proceedings are permitted according to the statute in such case made and provided.*