J. M. SAYERS *v.* MONTPELIER & WELLS RIVER RAILROAD.

November Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed May 15, 1916.

*Railroads—Abolition of Grade Crossings—Farm Crossings—*
  *Public Service Commission—Jurisdiction and Powers—*
  *Orders—Control by Courts—Relief in Equity—Collateral*
  *Attack—Eminent Domain.*

Within certain limitations one may collaterally attack an order of
  the Public Service Commission abolishing a railroad-highway cross-
  ing at grade, notwithstanding he was a party to the proceeding be-
  fore the Commission and could have had an appeal.

Under P. S. 4544, making it the duty of the Public Service Commission to determine by whom its order for the elimination of a railroad-highway crossing at grade shall be executed, where defendant railroad was designated by such order to execute it, in the execution thereof defendant ·was acting as the agent selected by the Commission to fulfill its order, and, if the order was a valid exercise of the powers of the Commission, it relieves defendant from ·liability in fulfilling it.

The court of chancery, not acting as an appellate tribunal, will not interfere with the proceedings and determinations of inferior boards or tribunals of special jurisdiction, while acting within their powers or exercising a discretion conferred upon them by the Legislature, except in special cases presenting some acknowledged and well-defined ground of equity jurisdiction, as when necessary to prevent irreparable injury or a multiplicity of suits.

Though the Public Service Commission exercises special and limited powers, as to which nothing will be presumed in favor of its jurisdiction, still, within the proper limits of the authority conferred upon it by the Legislature, its jurisdiction is exclusive and can be reviewed only in the manner provided by statute.

The courts have power to prevent an abuse of discretion by the Public Service Commission and to require that its powers be exercised according to law and so as not to injure property rights unjustly.

Whether the orders of the Public Service Commission deprive a party · of a constitutional or statutory right, whether he has been accorded a fair and adequate hearing, and whether, · for any reason, its orders are contrary to law, are all justiciable questions, and, if they arise in circumstances calling for equitable relief, the court of chancery will afford a remedy.

The primary object of P. S. 4611 and P. S. 4544, as amended by No. 108, Acts 1908, giving the Public Service Commission jurisdiction in matters relating to railroad-highway crossings at grade, is to provide an effective means to secure the ·elimination of such dangerous grade crossings, and the incidental power to change the location of an existing highway expressly given the Commission is to be exercised as a mere incident to the real purpose of the statute, and so can result in only such changes as are fairly incident to adapting railroads and public highways to each other so as best to promote the safety and convenience of the traveling public.

This power of the Public Service Commission to change the location of highways, by necessary implication, includes the power to discontinue the portion that occupied the old location and to bar the grade crossing to public travel.

Whatever is reasonably necessary and proper to be done in order to abolish a railroad-highway crossing at grade, or fairly may be regarded as incidental thereto, is within the jurisdiction of the Public Service Commission, and so when an ordered change in the location of a public highway, properly made for the purpose of abolishing such a grade crossing, deprives a person of the benefit of a public highway, the Commission has the power to order a farm crossing for the benefit of such person.

P. S. 4549, as amended by §3, No. 108, Acts 1908, gives the Public Service Commission exclusive jurisdiction, without let or hindrance of the selectmen, to condemn lands and award damages in a proceeding for the abolition of a railroad-highway crossing at grade.

Where plaintiff was a party to proceedings before the Public Service Commission for the abolition of railroad-highway crossings at grade abutting his land, and acquiesced therein to the extent of accepting the Commissioner's award of damages and agreeing to accept the old crossing as a farm crossing for the exclusive use of his premises, primary jurisdiction of his petition to have the farm crossing displaced by an overpass is in the Public Service Commission, and not in a court of chancery, which has no power to eliminate grade crossings nor to locate public highways, and so can afford plaintiff no relief where he fails to show that he has applied to, and has been denied relief by, the Public Service Commission.

APPEAL IN CHANCERY. Heard on the pleadings and a master's report at the June Term, 1915, Orange County, *Slack,* Chancellor. Decree, strictly *pro forma,* dismissing the bill with costs to defendant. The plaintiff appealed. The opinion states the case.

*E. W. Smith* for the plaintiff.

*H. C. Shurtleff* for the defendant.

TAYLOR, J. This proceeding grows out of the elimination of two grade crossings on the line of the Montpelier and Wells

River Railroad in the town of Newbury. Pursuant to the statute, defendant preferred its petition to the Public Service Commission praying that the crossings be eliminated; and such proceedings were had thereon that, on Oct. 7, 1912, the commission, having found that said crossings were among the most dangerous on the line of defendant's road and that public safety required that they be eliminated by the construction of a connecting section of public highway in the manner and locality indicated, made an order requiring the defendant to lay out and construct the connecting section of highway over the course and according to specifications detailed in the order. The commission also ordered the defendant to construct and, until further order, maintain a farm crossing at a point to be agreed upon with the plaintiff for the exclusive use of his land on the north side of the connecting section of highway; that all the work ordered be completed on or before May 1, 1913, and done to the satisfaction of the commission; that, upon the completion of the work ordered, the two highway crossings "shall forever thereafter be discontinued and abandoned as such, and the Montpelier and Wells River Railroad and its successors in the operation of said railroad shall forever thereafter fence and bar the same against public travel." The crossings to be eliminated were about fifty rods apart. The new road contemplated in the order was on the opposite side of the railroad from the old highway, but in the same general locality. After the work under this order was completed as it now is, and before plaintiff brought this bill, the commission made an order approving and accepting the work, opening the new highway for public travel and closing said highway crossing. Plaintiff was made a party to the proceedings before the commission and appeared therein but took no appeal from their orders.

In his bill of complaint, after reciting in detail the proceedings before and order of the Public Service Commission, plaintiff alleges that he is the owner of five dwelling houses and a water power located on the northerly side of defendant's railroad; that before the change effected by the order of the commission he had access to his premises by a public highway; that there is quite a large amount of travel to and from said premises; that to enjoy his premises it is necessary to have access to a highway; that the effect of said order and the action of the defendant has been to cut him off entirely from access to any public

highway; that defendant has not complied with so much of said order as required it to construct and maintain a farm crossing for the exclusive use of his land, but neglects and refuses so to do; that defendant has never agreed with him as to the location of said farm crossing nor furnished an adequate crossing for his benefit; that there is a ledge cut across which defendant could construct an overhead bridge, which would accommodate him and obviate the necessity of his crossing the railroad at grade to reach his premises from the public highway. In an amendment to the bill plaintiff alleges that it has been of great damage to him not to have suitable access to a highway, which damage, he says, defendant ought to pay.

The prayer of the bill is that defendant may be compelled to build and maintain an overhead bridge in lieu of a crossing at grade, or to furnish other sufficient and adequate means of access to plaintiff's premises from the highway. There is also a prayer for general relief.

For answer the defendant admits that plaintiff is the owner of land situated as alleged in the bill, that it petitioned the Public Service Commission for the abolition of the grade crossings mentioned in the bill, that the commission ordered said crossings abolished, and that the effect of their abolition was to cut off the plaintiff's land from the public highway; but alleges that the commission ordered a farm crossing constructed so as to connect plaintiff's land with the public highway, that it agreed with plaintiff as to the location of said farm crossing, that it constructed said crossing agreeably to the order of the commission, that plaintiff took no appeal from said order, assisted in the construction of the crossing and made no complaint in that regard until after the order of the commission had been fully complied with.

The cause was first heard before the Chancellor on demurrer to the bill, which defendant incorporated in its answer. The demurrer having been overruled the answer was ordered brought forward and issue thereon joined, and the cause was referred to a special master. In addition to the facts conceded in the pleadings the master finds that plaintiff agreed with defendant that a farm crossing should be constructed at the point where the original highway crossed the railroad near the easterly end of plaintiff's property; that it was mutually understood that defendant should provide a crossing at grade at that point and

should also provide a way to reach the highway, a distance of about ten rods, but that the location of the connecting way was not agreed upon; that defendant constructed the crossing over the tracks in a satisfactory manner; that the connecting way was constructed northerly of the old highway, turning nearly at right angles after crossing the track and extending for a distance of about ten rods alongside the railroad track and very close to it, in part at least upon defendant's right of way; that the way was so constructed and railed that it was very narrow, not exceeding 12 feet in width; that the way from the crossing was never accepted by the plaintiff nor by the selectmen of the town of Newbury, but that both plaintiff and the selectmen refuse to accept it as carrying out the order of the commission; that plaintiff has no other way to reach his premises; that the action of defendant in so constructing the connecting way has decreased the annual rental value of plaintiff's property $125; that the value of plaintiff's premises will be greatly decreased and his water privilege rendered valueless, if plaintiff is confined to the present way and crossing, on account of the difficult approach thereto. In this connection the master finds that the crossing itself is sufficient and adequate, but that the crossing in connection with the connecting way is entirely inadequate for the purposes of plaintiff and the occupants of his land; that the most direct route from the crossing to the highway is along the line of the old highway; that, if that is not practicable under the circumstances, a way farther from the railroad track could have been constructed at about the same expense. He also finds that plaintiff was allowed and paid $200 for land used in constructing the new highway, but that this land damage had nothing to do with the farm crossing and the connecting way.

The cause was heard on the pleadings and master's report, the chancellor dismissed the bill strictly *pro forma*, and the plaintiff comes here on appeal.

In his bill plaintiff does not attack the jurisdiction of the Public Service Commission to make the order respecting a farm crossing, but bases his claim for equitable relief upon the failure of the defendant to comply with the order in that regard. He attempts now to raise the question of the jurisdiction of the commission to close the old highway and deprive him of the privileges thereof, as well as the constitutionality of the statute creating the commission. We pass without deciding whether

these questions are properly here, not having been raised in the bill. As to the question of the constitutionality of the statute, it is enough to say that it was considered and the statute upheld in *Sabre et al.* v. *Rutland R. R. Co.*, 86 Vt. 347, 85 Atl. 693, Ann. Cas. 1915 C, 1269. It will be necessary to discuss the question of jurisdiction in connection with other matters presented in the bill.

Plaintiff states the real case made in his bill in the concluding paragraph of his brief, wherein he contends that defendant cannot shut up the old highway without affording him suitable means of getting from the new highway to his property; and that chancery has jurisdiction to compel defendant to do what in law it ought to do, and to pay the damages occasioned by its misconduct.

In considering plaintiff's standing in equity we must take into account that he was a party to the proceedings before the Public Service Commission. It nowhere appears that he appealed to the commission for the relief sought in this bill, nor for any relief that was not granted. Neither does it appear that he objected to the plan adopted by the commission for the elimination of the crossings, nor to their approval of the manner in which their order was carried out by the defendant. He did not see fit to avail himself of the appeal from the action of the commission, which the statute secures to him, but stood by and saw the work being done under their orders carried to completion. In these circumstances will a court of equity interfere?

It should be observed that the order of the Public Service Commission is called in question collaterally in this proceeding. Within certain limitations, plaintiff is at liberty to attack the order collaterally, notwithstanding he was a party and could have had an appeal. *Bessette* v. *Goddard*, 87 Vt. 77, 88 Atl. 1; *Alexander* v. *Montpelier*, 81 Vt. 548, 71 Atl. 720. However, the true nature of the proceeding is best understood with the relation of the defendant to the order of the Commission in mind. The statute makes it the duty of the Commission to determine by whom its orders shall be executed. P. S. 4544. In all the matters complained of, the defendant was acting as the agent selected by the commission for carrying out its plans for the elimination of the crossings. It is sought to compel the defendant to undo in part what it has done under authority of the commission and to substitute a crossing and approach that the

commission has not seen fit to order, besides paying damages. plaintiff claims to have suffered by reason of the work done under order of the commission.    In these matters the defendant stands no differently than would the town of Newbury, or some individual, had either been selected to do the work required by the order; and if the order was a valid exercise of the powers of the Commission, it relieves defendant from liability.    *Danner* v. *N. Y. & H. R. Co.,.* 73 Misc. Rep., 130 N. Y. S. 723.

Defendant insists that the court of chancery is without jurisdiction.    It is a well recognized general rule that a court. of chancery, not acting as an appellate tribunal, will not interfere with the proceedings and determinations of inferior boards, or tribunals of special jurisdiction, while acting within their powers or exercising a discretion conferred upon them by the Legislature, except in special cases presenting some acknowledged and well-defined ground of equity jurisdiction, as when necessary to prevent irreparable injury or a multiplicity of suits. *Ewing* v. *City of St. Louis,* 5 Wall. 413, 18 L. ed. 657; *Heffran* v. *Hutchins,* 160 Ill. 550, 43 N. E. 709, 52 Am. St. Rep. 353;. *Mt. Carmel* v. *Shaw,* 155 Ill. 37, 39 N. E. 584, 27 L. R. A. 580, 46 Am. St. Rep. 311; *Methodist Prot. Church* v. *City of Baltimore,* 6 Gill. 391, 48 Am. Dec. 540; *Town of Harrisonburg* v. *Roller,* 97 Va. 582, 34 S. E. 523; *Mann* v. *Mercer County Court,* 58 W. Va. 651, 52 S. E. 776; *Horton* v. *Mayor and City Council,* 4 Lea. 39, 40 Am. Rep. 1; *Kendall* v. *Frey,* 74 Wis. 26, 42 N. W. 466, 17 Am. St. Rep. 118; *Crawfordsville* v. *Braden,* 130 Ind. 149, 28 N. E. 849, 14 L. R. A. 268, 30 Am. St. Rep. 214; 4 Pom. Eq. Jur. 2678; 10 R. C. L. 343.

The similarity in purpose and function of the Public Service Commission to the Interstate Commerce Commission makes the decisions of the Federal Supreme Court concerning the powers and jurisdiction of the latter especially helpful here. It was held in *Baltimore & Ohio R. Co.* v. *United States, ex rel. Pitcairn Coal Co.,* 215 U. S. 481, 54 L. ed. 292, 297, 30 Sup. Ct. 164, a petition for mandamus to redress grievance due to regulations adopted by the railroad company for the distribution of coal cars, that when the grievances complained of are within the administrative competency of the commission, they are not subject to be judicially enforced; at least, till that body, clothed by the statute with authority on the subject, has the opportunity to exert its administrative function.    To the same effect is *Texas*

& P. R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 51 L. ed. 553, 27 Sup. Ct. 350, 9 Ann. Cas. 1075.  Again, in Atchison, T. & S. F. R. Co. v. United States, 232 U. S. 199, 58 L. ed. 568, 34 Sup. Ct. 291, a proceeding attaching an order of the Interstate Commerce Commission relating to rates, it was said that the courts were not vested with power to make rates, that being a legislative function, and that "they cannot interfere with the rates fixed or practices established by the commission unless it is made plainly to appear that those ordered are void." Finally, it was held in Pennsylvania Co. v. United States, 236 U. S. 351, 59 L. ed. 616, 623, 35 Sup. Ct. 370, that, if the order made by the commission does not contravene some constitutional limitation, and is within the statutory authority of that body, and not unsupported by testimony, it cannot be set aside by the courts, as it is only the exercise of an authority which the law vests in the commission.  Mr. Justice Hughes tersely sums up the whole matter in these words:  "We do not sit as a board of review to substitute our judgment for that of the Legislature, or of the commission lawfully constituted by it, as to matters within the province of either." Simpson v. Shepard, 230 U. S. 352, 57 L. ed. 1511, 33 Sup. Ct. 729, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916 A, 18.  See also Int. Com. Com. v. Union P. R. Co., 222 U. S. 541, 56 L. ed. 308, 311, 32 Sup. Ct. 108; Int. Com. Com. v. Louisville & N. R. Co., 227 U. S. 88, 57 L. ed. 431, 33 Sup. Ct. 185; Hocking Valley Ry. Co. v. Pub. Utilities Com., (Ohio), 110 N. E. 952; In re Selectmen of Hadley, 178 Mass. 319, 59 N. E. 805; In re Old Colony R. Co., 163 Mass. 356, 40 N. E. 198.

Argument is unnecessary to support the conclusion that primary interference of the courts with the administrative functions of a commission, like our Public Service Commission, is incompatible with the proper exercise of governmental powers. If the valid orders of the commission were open to collateral attack at the option of any party aggrieved, it would give rise to confusion and result in delay,—in short, wholly defeat the purpose of the statute creating the commission.  Though exercising special and limited powers, as to which nothing will be presumed in favor of their jurisdiction, (Bessette v. Goddard, 87 Vt. 77, 88 Atl. 1; Colonial Light & Power Co. v. Creaser et al., 87 Vt. 457, 89 Atl. 472), still, within the proper limits of the authority conferred upon them by the Legislature, their jurisdiction is exclusive and can be reviewed only in the manner

provided by the statute. Undoubtedly the courts have power to prevent an abuse of discretion by the commission and to require that their powers be exercised according to law and in a manner not to injure property rights unjustly. Whether their orders deprive a party of a constitutional or statutory right, whether he has been accorded a fair and adequate hearing, or whether for any reason their orders are contrary to law, are all justiciable questions; and, if they arise in circumstances calling for equitable relief, the court of chancery will afford a remedy. See *Int. Com. Com.* v. *Ill. C. R. Co.*, 215 U. S. 452, 54 L. ed. 280, 30 Sup. Ct. 155; *Int. Com. Com.* v. *Union P. R. Co.*, 222 U. S. 541, 56 L. ed. 308, 32 Sup. Ct. 108.

This brings us to the inquiry whether the matters here complained of were within the jurisdiction of the Public Service Commission. P. S. 4611 gives the commission jurisdiction in all matters respecting highway grade crossings. P. S. 4544, as amended by No. 108, Acts of 1908, provides that on petition of the selectmen of a town within which a public highway crosses or is crossed by a railroad, or the general manager or attorney of such railroad, alleging that public safety requires an alteration in such crossing, its approaches, the method of crossing, the location of the public highway, the closing of a public highway crossing and the substitution of another therefor not at grade, * * * and praying that the same may be ordered, the commission is required to determine what alteration, changes or removals, if any, shall be made and by whom. The primary object of this statute is to provide an effectual means to secure the elimination of dangerous highway crossings. As a means to that end the incidental power to change the location of an existing highway is expressly conferred upon the commission; but this power is to be exercised as a mere incident of the real purpose of the statute. *Bessette* v. *Goddard, supra.* In short, the authority of the commission to change the location of highways goes no further than to order such changes as are necessary and fairly incidental to the purpose of adapting railroads and public highways to each other in such a manner as best to promote the safety and convenience of the traveling public. See *In re Selectmen of Norwood,* 161 Mass. 259, 37 N. E. 199.

The power to change location of highways by necessary implication carries with it the power to discontinue the portion that occupied the old location and to close the crossing to public

travel.   See *Davis et al.* v. *County Comm'rs,* 153 Mass. 218, 26
N. E. 848, 11 L. R. A. 750; *Leighton* v. *Concord & M. R.,* 72
N. H. 224, 55 Atl. 938.   And when, as in this case, the change
in location deprives one of the benefits of a public highway, the
commission undoubtedly have the right, in case of necessity and
as an incident of their authority over grade crossing elimina-
tions, to order a farm crossing for the benefit of such individual,
to the end that their power in that regard may be .effectual.
This power springs from and is limited by the rule that what-
ever is reasonably necessary and proper to be done in order to
abolish grade crossings, or fairly may be regarded as incidental
thereto, is within the jurisdiction of the commission.   *Bacon* v.
*Boston & Maine R. R. Co.,* 83 Vt. 421, 76 Atl. 128; *Bessette* v.
*Goddard, supra.*   It was held in a recent case in Massachusetts
that this rule applies not only to the manner in which the work
shall be done, but as well to the scheme or plan as a whole that
the commission adopts to accomplish the elimination.   *In re
Mayor & Aldermen, City of Waltham,* 206 Mass. 208, 92 N. E.
477.   It fairly appears that the farm crossing and the connect-
ing way were necessarily incident to the general plan adopted
by the commission for eliminating the crossings in question.
The fact that their location was originally left to agreement of
the parties interested is not relied upon as affecting the validity
of the order.   The commission still had the power in case of
disagreement, to fix the location on the further application of
either party.

Plaintiff insisted before the master that the connecting way
should have been so located and constructed that the selectmen
of Newbury would accept it as a highway and secured a finding
that the selectmen refused to accept it as carrying out the order
of the commission.   The bill does not predicate the relief sought
on that ground.   However, it seems desirable to consider what
control, if any, the selectmen have over the location of new
highways that become necessary in the elimination of grade
crossings.   This question was involved in *Stimets* v. *Highgate,*
81 Vt. 231, 69 Atl. 878, an appeal from the award of damages
by the selectmen of defendant town for land taken for a high-
way laid out by them under an order of the Railroad Commis-
sion for the purpose of eliminating highway crossings.   It was
then held that the statute under which the order was made gave
no authority to the commission to order the highway laid over

a particular route; that their authority extended no further than to adjudge whether it was necessary to take land to eliminate the crossings, leaving the route to be determined by the selectmen. The decision was controlled by the fact that, as the law then stood, the selectmen alone had the authority to take the land when the town or an individual, and not the railroad, was ordered to construct the new highway. Attention was called to the fact that under P. S. 4549, if the railroad was selected to carry out the order, the commission had the authority to determine the necessity for the taking and appraise the damages. At the next session of the Legislature, and evidently because of this decision, the statutes relating to the subject were amended in several important particulars. P. S. 4549, relating to taking land for the new highway, was so amended as to confer full authority upon the commission to condemn the land and award damages. No. 108, Acts of 1908, sec. 3.

It is of the highest importance to the safety and convenience of the public, as well as the prompt and efficient administration of the law relating to grade crossing eliminations, that there should not be divided and possibly conflicting authority in the premises. The amendments of 1908 have removed the considerations which forced the Court to hold in *Stimets* v. *Highgate* that the authority to determine the location was left with the selectmen. In revising the statute with a view to conferring full authority upon the commission it was not necessary to change the section relating to general jurisdiction, as the provision that the commission shall determine what alterations, changes or removals shall be made is certainly broad enough to cover the location of new highways. When all the provisions relating to the subject are considered together there can be no doubt that the Legislature intended to secure unity of action and purpose by giving the Public Service Commission exclusive jurisdiction of the whole matter.

The farm crossing and connecting way involved in this case were a part of the single scheme for the elimination of the highway crossings. The commission had jurisdiction to determine the necessity for their elimination and the manner in which it could best be accomplished with a view to public safety and convenience. Plaintiff was a party to the proceedings before the commission and acquiesced therein to the extent of accepting the commissioners' award of land damages and agreeing

to accept the old highway crossing as a farm crossing for the exclusive use of his premises. He also understood that defendant was to construct a way from the crossing to reach the new highway, a distance of about ten rods. He owned the land over which the way must be built. In the final analysis, the only ground of complaint that plaintiff has is that the way was located without his approval. He insists that it should have been located on the line of the old highway, which would be the most direct route; but it fairly appears that such location is impracticable on account of grade. He has failed to show that he applied to and has been denied relief by the commission. He now asks the court of chancery to determine the location of the farm crossing, substituting an overpass for a crossing at grade, or that it order the defendant to build the connecting way somewhere else.

From what we have said it will be seen that plaintiff has mistaken his remedy. Primary jurisdiction over these matters is in the Public Service Commission. The court of chancery has no power to eliminate grade crossings or locate highways. The Legislature has seen fit to confer that authority upon the commission with a review by appeal to this Court. The commission had under consideration, or on plaintiff's motion could have considered, all the matters he now complains of. If dissatisfied with the action of the commission, an appeal to this Court, vested as it is with full equity powers over such appeals, would preserve all his rights. No. 108, Acts of 1908, sec. 4; P. S. 4599. See *Sabre* v. *Rutland R. R. Co.*, 86 Vt. 347, 368, 85 Atl. 693, Ann. Cas. 1915 C, 1269.

Having failed to show that his legal remedy has been exhausted or has proved inadequate, plaintiff is without standing in the court of chancery.

*Pro forma decree dismissing the bill affirmed and cause remanded.*