SELECTMEN OF NORWOOD *vs.* NEW YORK AND NEW ENGLAND RAILROAD COMPANY.

Norfolk.   December 7, 8, 1893. — May 15, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Abolition of Highway and Railroad Crossings at Grade — Constitutional Law.*

The precise manner in which the separation of the grades of an intersecting highway and railway is to be accomplished under St. 1890, c. 428, is to be determined by the commissioners and the court, and it is unnecessary that a plan or specification showing the nature of the alterations desired should accompany or be set forth in the petition.

A petition under St. 1890, c. 428, asking "that an alteration should be made in said crossing, in the approaches thereto, in the location of said public way, and in the grades thereof, so as to avoid a crossing at grade," is broad enough to authorize a change in the place of crossing, if, after the change is made, it remains a crossing of the same street, accommodating substantially the same travel, so that it can fairly be called the same crossing removed a short distance to a new location.

The St. 1890, c. 428, entitled "An Act to promote the abolition of grade crossings," is constitutional.

Where two new crossings and two new ways proposed in substitution for one crossing at grade of a railroad and highway are each a considerable distance from the old ones, and the two new ways are each of considerable length, and are more than a fair substitute for the old way, they are more than can be ordered under a statute which, when a crossing is discontinued, authorizes new ways to be built only "in substitution therefor."

An owner of real estate abutting on a street a portion of which is discontinued in proceedings under St. 1890, c. 428, none of whose land is taken, and none of which abuts on the discontinued portion of the street, has no personal or private interest different in kind from that of other abutters on the street, and he is not entitled to appear and be heard as a party to proceedings under that statute.

The appointment by the Superior Court, upon the motion of all the original parties to proceedings under St. 1890, c. 428, for the abolition of a grade cross-

ing, of a person as one of the special commissioners who, prior to such appointment, had been an Assistant Attorney General, and as such had entered an appearance for the Attorney General as the representative of the Commonwealth, which was a party to the proceedings, is not, in the absence of evidence to show interest or prejudice, such an error as requires the report of the commission to be set aside in behalf of persons interested in the proceedings who were not originally parties.

THREE PETITIONS, under St. 1890, c. 428, for the abolition of certain grade crossings in the town of Norwood.

The first two petitions, both filed September 22, 1890, by the selectmen of the town of Norwood, alleged that Washington and Guild Streets, public ways in that town, crossed the tracks of the New York and New England Railroad Company at grade, and representing that " it is necessary for the security and convenience of the public that an alteration should be made in said crossing, in the approaches thereto, in the location of said public way, and in the grades thereof, so as to avoid a crossing at grade," prayed that a commission should be appointed as authorized by the statute. The petition with reference to the crossing of Chapel Street prayed that such alterations should be made as were necessary to avoid a crossing at grade, "or that such crossing should be discontinued, and a new way substituted therefor." The third petition, which was filed by the directors of the railroad company on November 24, 1890, asked for the abolition of the grade crossing at Railroad Avenue.

The Superior Court ordered these petitions to be consolidated and heard as one. Commissioners were appointed, who made a report, which prescribed new ways to be built under the railroad as substitutes for the grade crossings at Washington, Chapel, and Guild Streets, and ordered portions of those streets to be discontinued, and also prescribed two new crossings and two new ways, of greater width and superior construction, to be constructed in substitution for the grade crossing at Railroad Avenue, one of which was to pass over the railroad at some distance easterly of the grade crossing, while the other was to pass under it at Nahatan Street, eight hundred and fifteen feet west of Railroad Avenue, and ordered the discontinuance of that portion of the avenue included within the railroad location.

The railroad company filed objections to the report of the

commissioners, for the reason that the alterations prescribed were not warranted by law, in that they were not within the scope of the petition, nor of the statute under which it was brought, and because the new ways were not fair substitutes or equivalents for the ways then existing; that as to the crossing at Railroad Avenue, the report required the construction of two wholly distinct ways, either one of which was more than an equivalent for the way then existing, and that one of the ways was distant eight hundred and fifteen feet, and wholly disconnected, from the crossing at Railroad Avenue; that it involved an extension of Nahatan Street, and amounted to a construction of that road for the town of Norwood, ninety per cent of the expense of which the railroad company and the Commonwealth would be required to pay; that the report provided for alterations which are unnecessary, extravagant, and expensive; and that the statute under which the commissioners purported to act was unconstitutional.

One Shattuck, an owner of real estate at the corner of Washington and Chapel Streets, no part of which abutted on that part of the street which was discontinued, and none of which was taken, claimed a right to appear and be heard as a party, and also filed objections to the report of the commissioners, because one of the commissioners was not a disinterested person, but was, prior to his appointment as such commissioner, attorney of record for the Commonwealth, one of the parties to the proceedings, and as such entered an appearance therein which was not afterward withdrawn. In his objections to the report of the commissioners he says, " This objection is made to apply only to so much of said report as relates to the abolition of said grade crossings on Washington and Chapel Streets"; and his exceptions to the report, subsequently filed, relate only to the same matter.

One of the commissioners, prior to his appointment as such, when an Assistant Attorney General, entered his appearance in the case for the Commonwealth. Afterwards all the parties presented his name to the court for appointment as a commissioner, and no objection was made to him until the filing of exceptions by the railroad company to the decree confirming the report of the commissioners.

The report of the commissioners was referred to a special master to hear the parties, and to find the facts relative to the objections of the railroad company, and he subsequently reported as to the crossings ordered in substitution for the Railroad Avenue crossing, that " neither of said new crossings is a fair substitute (in the sense of being a fair equivalent) for the present grade crossing at Railroad Avenue, but both of them constitute more than a fair substitute therefor."

After a report of the findings of the special master, a decree was entered by the Superior Court confirming the report of the commissioners, and the railroad company and Shattuck alleged exceptions, and appealed.

*M. Storey & F. A. Farnham*, (*R. F. Sturgis* with them,) for the railroad company.

*J. C. Lane*, for Shattuck.

*J. J. Feely*, for the selectmen of Norwood.

KNOWLTON, J.   This case comes to us on exceptions of the New York and New England Railroad Company to rulings in the Superior Court, and on an appeal by the same party, involving substantially the same questions as those raised by the bill of exceptions.   There are also exceptions of one Shattuck, a landowner, who claimed a right to appear before the court and be heard as a party.   There are three petitions under the statute of 1890, c. 428, two by the selectmen of Norwood, and one by the New York and New England Railroad Company, which were ordered to be consolidated and heard as one.   They relate to crossings of the New York and New England Railroad Company by public highways at grade, and they severally ask that such changes may be made in the way as will avoid a crossing at grade.   Commissioners were appointed by the Superior Court, a report was made by the commissioners, a special master was subsequently appointed to hear the parties and find the facts relative to certain objections made by the railroad company, and after a report of his findings a decree was entered by the court confirming the report of the commissioners.

The court rightly refused to rule that no proper petition had been filed.   It is not necessary that a plan or specifications showing the nature of the alterations prayed for should accompany the petition, or that the alterations desired should be set

forth with any greater particularity or precision than was done in these petitions.  The precise manner in which the separation of the grades is to be accomplished is to be determined by the commissioners and the court, and need not be set forth in the petition.

There was no error in the refusal to rule " that the commissioners' report was erroneous as matter of law, in that it required the discontinuance of an existing way in each of the three cases in question, and the building of a new way, or of new ways, in substitution therefor, which were not prayed for in said petitions, or either of them."  Such changes as were made under the two petitions of the selectmen of Norwood were within the language of the statute, which was followed in the petitions.  In regard to the crossing on Washington Street, and also that on Guild Street, the petitioners asked " that an alteration should be made in said crossing, in the approaches thereto, in the location of said public way, and in the grades thereof, so as to avoid a crossing at grade."  We are of opinion that this language is broad enough to authorize a change in the place of crossing, if, after the change is made, it remains a crossing of the same street, accommodating substantially the same travel, so that it can fairly be called the same crossing removed a short distance to a new location.  An alteration of the public way is expressly authorized, as well as an alteration of the crossing, and these provisions, taken together, considered in reference to the purpose to be accomplished, plainly imply that the location of the crossing may be changed.  In many cases, the relative heights of the railroad track and of the land in the vicinity of a crossing are such as almost to require a removal of the crossing for a short distance in order conveniently to carry the way over or under the track.  *Davis* v. *County Commissioners*, 153 Mass. 218.  It would be too narrow a construction of the language of the statute to hold that there could be no change of a crossing to a new location, which should leave it substantially the same crossing and the same way.  What the commissioners did under the petitions relating to these two crossings was to make a change in the location of each of the ways and of the crossings, which is apparently necessary to the construction of a way at an easy

grade under the railroad, and which does not materially affect the public travel, save as it carries it under the railroad, instead of across it at grade.

The words, " or that such crossing should be discontinued with or without building a new way in substitution therefor," (St. 1890, c. 428, § 1,) which immediately follow the language we have been considering, apply to a case where a crossing at grade is discontinued and no other crossing is provided near it, or where a crossing is discontinued and one is provided on a new way materially different from the old one in reference to its location, or the persons and travel which it is intended to accommodate, which new way may fairly be considered a substitute for the other.

It is contended that the statute under which these proceedings are had, as. construed by the Superior Court, is unconstitutional. It is quite clear that a statute providing for general public improvements, to be paid for as the changes of grade are to be paid for under this statute, would be unconstitutional, as an attempt to impose taxes which would not be proportional. The cost of these changes is to be paid by the town, the railroad company, and the State, in proportions which are fixed without reference to the value of the property owned by them respectively, and without reference to the benefits which they severally receive in any particular case. This would not be a legitimate exercise of the power of taxation to meet public charges. See Const. Mass. c. 1, § 1, art. 4; *Dorgan* v. *Boston*, 12 Allen, 223, 235; *Merrick* v. *Amherst*, 12 Allen, 500; *Boylston Market Association* v. *Boston*, 113 Mass. 528; *Howe* v. *Cambridge*, 114 Mass. 388.

The validity of this statute does not depend upon the right of the Legislature to levy taxes. It was enacted rather in the exercise of the power of the Legislature to enact all needful laws to prevent accidents, and to provide as well for the convenience as the safety of the public while travelling on highways across railroads, or while being transported in the cars of the railroad companies. It would have been in the power of the Legislature in granting charters to railroad corporations to provide that the railroad should not be constructed across a public highway without carrying the highway over or under the railroad, and

that all the expenses of changing the grade of the way and con-
structing the approaches to the railroad should be borne by the
railroad corporation.    If, by an increase in the amount of travel
at a grade crossing, or of the number of trains running over the
railroad, or by changes in the manner of running trains, or of
the modes of travel on a highway, or if by reason of any other
change of circumstances the Legislature should deem it best for
the public interest that a grade crossing should be abolished, it
would be within the constitutional authority of the Legislature
to forbid the continuance of it, and to require the railroad com-
pany to pay the whole, or any part, of the cost of making the
change.    *Roxbury* v. *Boston & Providence Railroad,* 6 Cush. 424.
*Commonwealth* v. *Eastern Railroad,* 103 Mass. 254.    *Mayor, &c.
of Worcester* v. *Norwich & Worcester Railroad,* 109 Mass. 103.
*In re Mayor, &c. of Northampton,* 158 Mass. 299.    *New York &
New England Railroad* v. *Bristol,* 14 Sup. Ct. Rep. 437.    *New
York & New England Railroad's appeal,* 58 Conn. 532, and 62 .
Conn. 527.    *Boston & Maine Railroad* v. *County Commissioners,*
79 Maine, 386.    *State* v. *Wabash, St. Louis, & Pacific Railway,* 83
Mo. 144.    This it might do in the exercise of the police power
for the protection of the people, and its decision in regard to what
is right and proper in each particular case, or in any class of
cases, would not be subject to revision by any other tribunal.
This would not be taking from the railroad company, its prop-
erty or any vested right.    It would be merely prescribing in the
interest of the public the mode of constructing its road.

Of the power to prescribe such regulations for railroad cor-
porations, there can be no doubt.    These corporations are crea-
tures of the State engaged in doing a public business, and are
bound by any reasonable statutes for the regulation of this busi-
ness which the Legislature chooses to enact.    *Attorney Gen-
eral* v. *Boston & Albany Railroad,* 160 Mass. 62.    *Parker* v.
*Metropolitan Railroad,* 109 Mass. 506.    *Chicago, Burlington,
& Quincy Railroad* v. *Iowa,* 94 U. S. 155.    *Budd* v. *New York,*
143 U. S. 517.    *Georgia Railroad & Banking Co.* v. *Smith,* 128
U. S. 174, 179.

The reservation of the right of amendment, alteration, or re-
peal of all charters subsequently issued, which was secured by
the statute of 1831, c. 81, and by later statutes of similar im-

port, makes it clear, if there could be any doubt without this provision, that the Legislature can now by an amendment of the corporate charter require anything that it properly could have required in the original construction of the railroad to make it safe for the passage across it of travellers on highways. This is a reservation of the right to legislate in regard to corporations and their management in any reasonable way, although it does not authorize the Legislature to deprive them of their property or of vested rights without compensation. The doctrine applicable to it was expressed by Chief Justice Waite in the *Sinking Fund cases*, 99 U. S. 700, 721, in these words: "Whatever rules Congress might have prescribed in the original charter for the government of the corporation in the administration of its affairs, it retained the power to establish by amendment." See also *Portland & Rochester Railroad* v. *Deering*, 78 Maine, 61; *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446; *Holyoke Co.* v. *Lyman*, 15 Wall. 500; and the Massachusetts cases above cited.

If the statute arbitrarily put upon railroads the expense or part of the expense of general improvements in the system of highways of a city or town not fairly incidental to changes in the crossing at the railroad, it would be beyond the power of the Legislature to enact it. The railroad can properly be charged with expenses incurred in adapting the public ways and the railroads to each other in such a manner as best to promote the safety and convenience of all the people. To do this may in particular cases involve changes extending a considerable distance from the railroad. Whether such a change is within the power of the Legislature to make at the expense of the railroad company is to be determined by the requirements of public convenience and necessity, having reference to the interests of the railroad company as well as those of all the people who have occasion to cross the railroad. Whatever is incidental to a reasonable change in the mode of crossing may be included in the work for which the corporation may be charged under the statute. This may include not only a change in an existing crossing which does not destroy the identity of the crossing, but also the abolition of the crossing and the substitution of another for it on a new way, if the substitution provides no more than a fair

equivalent for that which is given up.  *Davis* v. *County Commissioners*, 153 Mass. 218.  The fact that in making the changes in this case some of the new ways and approaches to the crossing are to be wrought to a greater width than the old ones, and to be of a superior construction, is not, under the findings, a good ground of objection to the proceedings of the commissioners.  The work involved in the changes should be done in a proper manner.

In one particular we think there was error on the part of the commissioners and of the court.  In substitution for the grade crossing at Railroad Avenue they provide for two crossings and the construction of two new ways, each of which is a considerable distance from the old one.  The master finds that " neither of said new crossings is a fair substitute (in the sense of being a fair equivalent) for the present grade crossing at Railroad Avenue, but both of them constitute more than a fair substitute therefor."  There is nothing in the report of the commissioners that tends to contradict or control this finding of the master, but the facts disclosed show almost conclusively that the finding is correct.  We must assume, therefore, that the rulings and the decree of the Superior Court were made upon this finding of fact in connection with the other facts which appear in the reports, and the question is whether they were correct as matter of law.

It may be that the plan adopted by the commissioners is the best that could be devised for the accommodation of the public travel in this vicinity, but we are of opinion that the two crossings, involving as they do the construction of two new ways of considerable length, are more than can be ordered under a statute which, when a crossing is discontinued, authorizes new ways to be built only " in substitution therefor."  It is unnecessary to decide that in no case could two new ways and two crossings be ordered under the statute in substitution for a discontinued way and crossing.  Perhaps cases may be supposed where such a construction would be only a reasonable substitute and fair equivalent for that which is given up, but ordinarily a single new way and crossing are all that can be considered necessary or reasonable as a substitute for a discontinued crossing.  It is to be remembered that a railroad corporation can only be liable as an ordinary tax-payer for the cost of construction of new ways which

are not necessary to accommodate the travel that is to be provided for at the crossing which is changed. In the present case the two ways and crossings seem to be intended, in part at least, as an improvement of the general means of communication in the neighborhood, as distinguished from a provision for the better accommodation of those who have occasion to pass over the railroad at the existing crossing. We must, therefore, set aside that part of the report which pertains to the change of the crossing at Railroad Avenue. The remainder of the report, which pertains to the crossings at Washington, Chapel, and Guild Streets, is separable from this, and should be confirmed.

Except in regard to Railroad Avenue, as above set forth, we find no error of law in the proceedings of the commissioners, or of the special master, or of the Superior Court.

The exceptions filed by Shattuck relate to matters in regard to which he had no right to be heard as a party. In his objections to the report of the commissioners he says : " This objection is made to apply only to so much of said report as relates to the abolition of said grade crossings on Washington and Chapel Streets " ; and his exceptions to the report subsequently filed relate only to the same matter. He was the owner of certain real estate at the corner of Washington and Chapel Streets, but no part of it is taken, and it does not abut on that part of the street which is discontinued. He has no personal or private interest different in kind from that of other abutters on the street, and under the decision in *Chandler* v. *Railroad Commissioners*, 141 Mass. 208, he was not entitled to appear in court, or before the special master, and be heard as a party on the question whether the report should be confirmed.

The fact that he was the owner of land on Guild Street, a part of which was taken, is immaterial, inasmuch as he made no objection to the proceedings affecting that street. Whether, if he had objected to the change in that street, he would have been entitled to be heard as a party objecting to the confirmation of the report, it is unnecessary to decide.

He has brought to the attention of the court the fact that one of the commissioners, when an Assistant Attorney General, entered his appearance in the case for the Commonwealth. This does not show such an error as requires us to set aside the report

in behalf of persons interested in the proceedings who were not originally parties. All the parties presented the name of this person to the court for appointment as a commissioner, and no objection was made to the proceedings on account of his acting until the filing of the exceptions. He had been a public officer, and as such had entered an appearance for the Attorney General as the representative of the Commonwealth. The presentation of his name by all parties interested, and his appointment by the court, indicate that he was then found to be disinterested and unbiased. In the absence of evidence to show interest or prejudice, we must assume that he acted impartially.

The exceptions in regard to so much of the report as relates to the crossings on Washington, Chapel, and Guild Streets are overruled, and that part of the report is confirmed. In the opinion of a majority of the court, the exceptions in regard to Railroad Avenue should be sustained, and that part of the report which relates to the crossing of that avenue should be set aside.

*Decree accordingly.*