NEW HAVEN AND NORTHAMPTON COMPANY & another ·
*vs.* COUNTY COMMISSIONERS OF HAMPSHIRE.

Hampshire.    November 21, 1898. — March 2, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Certiorari — Railroad — Way — Power of County Commissioners — Statute.*

Under Pub. Sts. c. 112, § 125, authorizing the laying out of highways and town ways across a railroad previously constructed, county commissioners have no power to order a railroad corporation to construct across its railroad a highway which they have laid out and located.    .

If the crossing of a railroad by a highway in a city has been altered by proceedings under Pub. Sts. c. 112, §§ 129–134, county commissioners have no power to lay out and locate, or to authorize the city to lay out and locate, a highway across the railroad at the point where it was crossed by the way before such alteration, but if public convenience and necessity require a further alteration, it can be ordered only by fresh proceedings under the same statute.

PETITION for a writ of certiorari, to quash the proceedings of the respondents in laying out and ordering the construction of a highway in Northampton.    Hearing before *Field*, C. J., who reserved the case for the consideration of the full court.    The facts appear in the opinion.

*J. C. Hammond,* for the petitioners.

*W. G. Bassett,* for the respondents.

BARKER, J.    South Street in the city of Northampton is a highway which crosses the petitioners' railroad, and which formerly crossed it at grade.    By proceedings begun on November 14, 1889, upon petition of the mayor and aldermen of the city, under the provisions of Pub. Sts. c. 112, §§ 129–134, as amended and modified by Sts. 1882, c. 135, 1884, c. 280, 1885, c. 194, and 1887, c. 295, these crossings were separated and the highway was carried over the railroad at another point.    These proceedings were before this court in *Davis* v. *County Commissioners*, 153 Mass. 218, where it was held that so much only of South Street as was within the location of the railroad was discontinued, and that the deflection or alteration of the street by which it was carried over the railroad was within the powers conferred by the statutes cited.

On April 6, 1897, the mayor and aldermen presented to the county commissioners a petition representing that the public convenience and necessity required a highway to be laid out across the railroad, between two points described in the petition, and which points it is not disputed are in the outer lines of the railroad location, and at the place where the street crossed the railroad before the proceedings of 1889 ; so that the petition in effect merely asked the commissioners to again lay out and locate as a highway, or to authorize the city to lay out and locate as a highway, that part of the street which had been discontinued by the proceedings of 1889, in separating the grade crossings of the railroad and South Street.

On May 11, 1897, upon this petition, the commissioners adjudicated that common convenience and necessity required that a highway be laid out as prayed for across the railroad and under its tracks, and on October 5, 1897, made a final decree laying out and locating the highway as prayed for across the railroad and under its tracks, and ordering the construction of the highway within one year by the present petitioners, who are respectively the owner and the lessee of the railroad.

The petitioners contend that the proceedings of the commissioners under the petition of April 6, 1897, should be quashed, because they had no power to lay out a highway across the railroad, or to authorize the city so to do, at the point where the railroad and the street formerly crossed at grade, and because, under the charter of the city, its city council alone has power to lay out highways within the city, and because the county commissioners had no authority to order the present petitioners to construct the highway, and because the order for construction is indefinite, and because the carrying out of the order will involve an alteration in the grade of tracks which has been fixed by other proceedings under the grade crossing act, St. 1890, c. 428, and also because the carrying out of the order will result in endangering the railroad by the action of Mill River, and will destroy part of a city sewer.

If the county commissioners had any jurisdiction of the petition of April 6, 1897, their only authority was under the provisions of Pub. Sts. c. 112, § 125, which is the section authorizing the laying out of highways and town ways across a railroad previously

constructed. This section gives the county commissioners no power to order the construction of the highway by the railroad company. Such highways are left to be constructed by the usual agencies whose duty it is to make highways when the same are laid out and ordered to be constructed. This duty rests upon the towns and cities within which the highway is located, and, if a town or city does not perform this duty, the commissioners themselves are to cause the highway to be completed. Pub. Sts. c. 49, §§ 9, 60–63. This general provision is applicable as of course to all highways where no contrary provision is specifically made, as it is made in the case of the alteration of crossings under Pub. Sts. c. 112, §§ 129–134, and of the separation of grade crossings under the new grade crossing act, St. 1890, c. 428, and this general provision is the one applicable to the construction of highways laid out under the provisions of Pub. Sts. c. 112, § 125, across a railroad previously constructed. The county commissioners therefore had no power, even if they could lay out the way, to order its construction by the present petitioners, and this alone would require us to quash a material portion of the final decree.

But we are of opinion that the county commissioners had no power, upon the petition on which they made their adjudication, to lay out and locate, or to authorize the city to lay out and locate, a highway across the railroad at the point where it was formerly crossed by South Street. The provisions of Pub. Sts. c. 112, § 125, were not intended to apply to such a case. The crossing of the street and the railroad at that point having been altered by proceedings under Pub. Sts. c. 112, §§ 129–134, if thereafter public convenience and necessity required a further alteration, it could be ordered by fresh proceedings under the same statute. *Boston & Albany Railroad* v. *County Commissioners*, 164 Mass. 551, 554. And in our opinion it could be ordered in no other way. To permit the county commissioners, under the guise of laying out a new highway across the railroad, to restore the former crossing although at a different grade, would be to disturb the former decree by means which the Legislature never intended should be used for that purpose, and which are not adapted to do justice between the railroad corporations and the city, in a case

which is clearly within the provisions regulating the alteration of existing crossings, and not within those regulating the laying out of new highways across railroads previously existing. This objection goes to the whole of the proceedings, and requires that they should be quashed.

The substance of the situation is that when a change in the place of crossing is made in abolishing a grade crossing, if after the change is made it remains a crossing of the same street with the same railroad, accommodating substantially the same travel, it is really the same crossing though removed to a new location. *Norwood* v. *New York & New England Railroad*, 161 Mass. 259. If further alterations or changes are further required for the convenient passing of the travel 'of the same street across the railroad, they are to be made by new proceedings for the alteration of existing crossings. *Boston & Albany Railroad* v. *County Commissioners, ubi supra.*

We do not think it advisable to discuss any of the other questions raised. Whether, if there were occasion to lay out a highway in Northampton under the provisions of Pub. Sts. c. 112, § 125, it could be laid only by the city council, is an interesting question, which might involve an exhaustive examination of the charters of the cities of the Commonwealth, and the comparison of their provisions with those of the general statute provisions regulating the laying out of highways. Neither the decision of this question, nor that of the other questions which we have only stated, is material to the result.

> *Writ of certiorari to issue, and the proceedings of the county commissioners to be quashed.*