## SELECTMEN OF BROOKLINE, petitioners.

Norfolk.   May 17, 1920. — July 2, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Grade Crossing. Railroad. Statute. Damages,* Apportionment of expense of rebuilding bridge over railroad. *Constitutional Law,* Obligation of contracts, Police power, Public service corporations.

St. 1908, c. 542, amending St. 1906, c. 463, Part I, §§ 23, 25, by broadening and extending their provisions so that, where previously they related only to the construction, maintenance and repair of highway bridges over railroad locations, after the amendment they applied to cases where there was need of the "rebuilding of a highway bridge or any structural change or renewal for the purpose of

strengthening or improving it," while it could have no retroactive effect as to vested rights, conferred an authority coextensive with the statute which it amended, which thereafter must be read as if it originally had been in the amended form, and neither the provisions of the amending statute nor those of the statute as amended are restricted to railroad crossings altered after the amendment.

Upon proceedings under St. 1906, c. 463, Part I, §§ 23, 25, after their amendment by St. 1908, c. 542, a highway bridge in a town, which had been built over a railroad in accordance with a decree following proceedings under Pub. Sts. c. 112, §§ 131, 132, ordering that the town should bear "all future charges for keeping said bridge and the approaches thereto in repair," may be ordered to be rebuilt and a part of the expense of such rebuilding may be assessed upon the railroad.

The provisions of St. 1908, c. 552, are not inconsistent with those of St. 1906, c. 463, Part I, §§ 23, 25, as amended by St. 1908, c. 542.

A railroad corporation is a creature of the Commonwealth engaged in the doing of a public business and is bound by any reasonable statutes for the regulation of this business which the Legislature chooses to enact.

St. 1908, c. 542, amending St. 1906, c. 463, Part I, §§ 23, 25, is not obnoxious to the provisions of either the Federal or the State Constitution.

A part of the expense of rebuilding a highway bridge over a railroad or of making any structural change or renewal for the purpose of strengthening or improving it upon proceedings under St. 1906, c. 463, Part I, §§ 23, 25, as amended by St. 1908, c. 542, may be assessed upon the railroad corporation although it receives no benefit therefrom.

It could not be ruled as a matter of law, at the trial of an application under St. 1906, c. 463, Part I, § 27, for a revision of a report of a special commission relative to the rebuilding of a highway bridge, previously constructed over a railroad in the town of Brookline, that the railroad corporation received no benefit from such rebuilding, because thereby there was furnished at a crossing over the railroad a bridge more substantial and safe than the previous bridge and thus possible delay and damage which might be incident to a defect in the previous bridge were prevented.

In the proceedings under St. 1906, c. 463, Part I, §§ 23, 25, as amended by St. 1908, c. 542, above described, which were new proceedings, the intent and understanding of the parties to the proceedings under Pub. Sts. c. 112, §§ 131, 132, which resulted in the construction of the original bridge, were *held* to be immaterial.

Where, after a decree of county commissioners that a highway bridge over a railroad in a town should be rebuilt, the town carried the decree into effect "by agreement of all parties . . . and . . . paid the charges and expense of rebuilding" previous to a decree in proceedings instituted by it under St. 1906, c. 463, Part I, §§ 23, 25, as amended by St. 1908, c. 542, the railroad company, at the trial of an application under § 27 of the amended statute for a jury to revise the report of the special commission appointed under the amended §§ 23, 25, is entitled to a ruling that it need not pay to the town interest upon that part of the amount so expended by the town which afterwards was apportioned to be paid by the railroad company.

Two PETITIONS, filed in the Superior Court on April 6, 1916, under St. 1906, c. 463, Part I, §§ 23, 25, as amended by St. 1908,

c. 542, §§ 1, 2, for the appointment of special commissions to determine questions relative to the rebuilding of bridges over the Boston and Albany railroad at Cypress Street and at Aspinwall Avenue in Brookline under decrees of the county commissioners of Norfolk County entered on February 1, 1916.

Commissions were appointed and filed reports, which are described in the opinion. Thereafter the Boston and Albany Railroad Company and the New York Central Railroad Company applied, under St. 1906, c. 463, Part I, § 27, for revision of the reports of the special commissions. The applications were tried together before *Keating*, J. Material evidence, the substance of requests of the railroad companies for rulings and instructions, and the special findings of the jury are described in the opinion. The judge under St. 1913, c. 716, reported the cases to this court for determination, stating that he did so "upon the following terms and conditions which shall apply to each case: If upon all the evidence my rulings and instructions were correct, a decree shall be entered for the petitioners in accordance with the jury's special findings; if my rulings or instructions were wrong, a decree shall be entered in accordance with such rulings as I ought to have made, if the court is satisfied that it has before it all the facts necessary for determining the questions in dispute. If the court shall be of the opinion that it has not before it sufficient facts to determine said questions, the case shall stand for such further hearing as shall accord with the determination of the court."

St. 1908, c. 542, approved May 26, 1908, amending St. 1906, c. 463, Part I, §§ 23, 25, reads as follows:

"Section 1. Section twenty-three of Part I of chapter four hundred and sixty-three of the acts of the year nineteen hundred and six is hereby amended by inserting after the word 'board,' in the seventeenth line, the words: — This proceeding may include any case where there is need of the rebuilding of a highway bridge or any structural change or renewal for the purpose of strengthening or improving it, — and by inserting after the word 'building,' in the twentieth line, the words: — rebuilding, changing, renewing, — so as to read as follows: — Section 23. If a public way and a railroad cross each other, and the board of aldermen of the city or the selectmen of the town in which the crossing is situated, or the directors of the railroad corporation, or the directors of a street

railway company having tracks on the said way are of opinion that it is necessary for the security or convenience of the public that an alteration which does not involve the abolition of a crossing at grade should be made in the crossing, the approaches thereto, the location of the railroad or way, or in a bridge at the crossing, they shall apply to the county commissioners, or, if the crossing is situated in the city of Boston, to the board of railroad commissioners, who shall, after public notice, hear all parties interested, and, if they decide that such alteration is necessary, shall prescribe the manner and limits within which it shall be made, and shall forthwith certify their decision to the parties and to said board. This proceeding may include any case where there is need of the rebuilding of a highway bridge or any structural change or renewal for the purpose of strengthening or improving it. In case any street railway company is authorized to lay and use tracks upon the said way, the said company shall bear such part of the expense of building, rebuilding, changing, renewing, repairing or improving a bridge forming a part of said way, or of altering or improving the approaches thereto, as shall be deemed to be just by the commission provided for in sections twenty-five and twenty-six.

"Section 2. Section twenty-five of Part I of said chapter is hereby amended by inserting after the word 'such,' in the sixth line, the words: — bridge or, — and by inserting after the word 'such,' in the twenty-first line, the words: — bridge or crossing and, — so as to read as follows: — Section 25. A special commission of three disinterested persons, who shall be appointed as provided in the following section, shall determine which party shall carry such decision into effect and which party shall pay the charges and expenses of making such alteration and the future charges for keeping such bridge or crossing and the approaches thereto in repair, as well as the costs of the application to the county commissioners, or the board of railroad commissioners, and of the hearing before said special commission; and it may apportion all such charges, expenses and costs between the railroad corporation, the street railway company having tracks on said way, and the counties, cities or towns in which said crossing is situated and other cities and towns which may be specially benefited. If a street railway company is authorized to lay and use tracks upon any bridge in a highway which is built or repaired or altered as

above provided for, or the approaches to which are altered or improved as above provided for, the said commission shall determine what part of the charges and expenses of making such changes or improvements, or of keeping such bridge or crossing and approaches in good condition, shall be paid by the said street railway company."

St. 1908, c. 552, approved May 27, 1908, reads as follows:

"Section 1. If the county commissioners of a county, the board of aldermen of a city or the selectmen of a town in which a bridge at the crossing of a public way and a railroad, or a bridge upon which a street railway company is authorized to lay and use tracks, is located in whole or in part, or the directors of a corporation owning or operating such railroad, or the directors of a company owning or operating such street railway, are of the opinion that such bridge is in need of maintenance or repair, they may apply to the board of railroad commissioners who shall, after public notice, hear all persons interested, and, if they decide that the work of maintenance or repair is necessary, shall prescribe the manner in and the limits within which it shall be done, and shall forthwith certify their decisions to the parties.

"Section 2. If railroad corporations, street railway companies, counties, cities, towns, or any of them, jointly or severally, are charged with the duty of maintaining or repairing any such bridge under any provision of law, agreement, or decree of court, and if the party or parties so charged with such duty refuse or neglect to carry into effect such decision within a reasonable time, any other such party may apply to the Superior Court, which shall have jurisdiction in equity to enforce the carrying into effect of such decision by the party or parties so charged with such duty.

"Section 3. This act shall take effect upon its passage."

The cases were submitted on briefs.

*W. D. Turner & G. Hoague*, for the petitioners.

*R. A. Stewart & E. H. Abbot, Jr.*, for the respondents.

JENNEY, J. These cases, as stated in the report under which they are before the court, are "two applications [under St. 1906, c. 463, Part I, § 27] of the Boston and Albany Railroad Company and the New York Central Railroad Company, Lessee, [hereinafter referred to as the railroad] for a jury to revise the reports and awards of two Special Commissions both appointed . . . October

17, 1916, one to hear and determine which party should pay the charges and expenses incident to the execution of certain work ordered by the County Commissioners of Norfolk County under date of February 1, 1916, upon the bridge at Cypress Street in Brookline over the Boston and Albany Railroad; and the other to hear and determine which party should pay the charges and expenses incident to the execution of certain work ordered by the County Commissioners of said county under date of February 1, 1916, upon the bridge at Aspinwall Avenue in Brookline over the Boston and Albany Railroad."

Cypress Street, where it crossed the railroad, was a public way prior to 1851. In that year the Charles River Branch Railroad, "a corporation which was afterwards acquired by the Boston and Albany Railroad Company," was granted a location which crossed the street at grade, and the railroad was constructed thereover. On July 3, 1888, the commissioners in substance adjudged that it was necessary for the security and convenience of the public to erect a bridge over the railroad, which then was a part of the system owned and operated by the Boston and Albany Railroad Company, at the point where the street crossed it at grade; and the details of the construction of the bridge and its approaches were determined. On September 12, 1888, special commissioners were appointed under the provisions of Pub. Sts. c. 112, §§ 131, 132, and acts in amendment thereof, who, after hearing, directed that the railroad should build the bridge, abutments and superstructure, and should bear the cost of that work; that the town of Brookline should do all other work required by the order; and that the company should pay to the town a specified sum of money and a part of the cost of certain parts of the work. The commissioners further reported that the town should bear "all future charges for keeping said bridge and the approaches thereto in repair." The town of Brookline applied for a trial by jury, and, as a result of the trial, the answers to the issues submitted confirmed in effect the report of the commissioners, except that the amount to be paid to the town by the railroad was increased. On July 2, 1890, a decree was entered in accordance with the report of the commissioners, as modified by the findings of the jury. This decree provided: "Said town shall bear all future charges for keeping said bridge and the approaches thereto in repair." In the year 1913 the officers of

the railroad became satisfied that the bridge needed repairs and reported that fact to the officers of the town.

The "Charles River Branch Railroad Company, (whose successor is the Boston and Albany Railroad Company,) acquired its location now known as the Newton Highlands Branch," and prior to 1855 operated trains thereover. In 1855 the highway now called Aspinwall Avenue had not been laid out nor constructed to or near the railroad location. In 1857 a petition was filed with said commissioners requesting that a new highway be constructed with a crossing over said railroad location, and on January 11, 1857, the commissioners adjudged and determined that public convenience and necessity required that a highway be laid out with an "overpass bridge at the railroad crossing." Thereafter they located said road and bridge, and directed that a bridge be constructed over said railroad "of a width and space specified," and that the town of Brookline should construct the same at its sole expense. This decree was complied with. In 1888 the selectmen petitioned the county commissioners asking them to order that this bridge be widened to the full width of said avenue; and, after hearing, the commissioners in substance ordered that it was necessary for the security and convenience of the public that alterations be made in the bridge, and prescribed in detail its width and the construction. On April 7, 1893, the Boston and Albany Railroad Company granted to the town an easement permitting the construction and maintenance of abutments and wing-walls of said bridge upon certain land owned by it. On March 29, 1893, the selectmen of the town, in a petition to the Superior Court, recited the entry of the decree of the county commissioners, and prayed for the appointment of a special commission. This commission was duly appointed. Said commissioners on March 31, 1893, ordered "in conformity with the agreement of the parties" that the alterations in the bridge and the approaches thereto should be made by the town; that the county of Norfolk should pay a part of the expenses; and that "the town of Brookline . . . pay the rest, and . . . keep the said bridge and the approaches thereto in repair, the Boston and Albany Railroad Company having waived all claim for land, grade and other damages to arise from said alterations." On April 18, 1893, by consent of all parties a decree was entered in·the Superior Court confirming this award. The bridge as thus altered

was kept in repair thereafter by the town, and was used by the public for many years. In 1914 the railroad officials reported to the officers of the town that the bridge was not in good repair.

The selectmen of Brookline, in 1915, petitioned the county commissioners, reciting that it was no longer practicable to make these bridges safe by repairs, and that it was necessary to rebuild the same for the security and convenience of the public, and requested them, if they should determine that such rebuilding was necessary, to prescribe the manner and limits thereof. After hearing, the commissioners adjudged in each proceeding "that it . . . [was] necessary for the security and convenience of the public that the highway bridge . . . be rebuilt," and prescribed the manner and limits of the work. The new bridges provided by the decrees were of the same width as the old bridges, but it was required that the iron and steel superstructure be encased in reinforced concrete, the roadway, which in the old bridge was of hard pine under floor and a spruce plank wearing surface, be paved with wood blocks, and that sidewalks be constructed of concrete slabs with heavy granolithic surfaces with chambers for gas and water pipes.

Thereafter petitions were filed in the Superior Court for the appointment of special commissioners, to determine who should carry the decisions into effect, and who should pay the charges and expenses incurred by reason thereof, the future charges for keeping the bridge in repair, and the costs of the application and of the hearings. Commissioners having been appointed, they reported to that court that the town of Brookline had properly carried into effect, by agreement of all parties, the orders of the county commissioners, and had paid the charges and expense of rebuilding the superstructure of the bridges. The bridges as now constructed, being of reinforced concrete, are stronger than those which they replaced, will carry heavier loads, and will have a very much longer life. The commissioners determined that the railroad and the town of Brookline should pay all charges and expense of rebuilding the superstructure of the Cypress Street bridge; and that, of the amount paid by the town, the railroad should pay $4,000 with interest at the rate of three per cent per annum from March 28, 1916, and the town the remainder. The commissioners determined that the expense of reconstruction of the Aspinwall Avenue bridge should be borne by the railroad and by the town. They appor-

tioned $750 of the expense thereof upon the former with interest at the rate of three per cent per annum from March 28, 1916, and substantially $7,421.87, the balance of charges and expenses of rebuilding the superstructure, upon the town. They further reported, concerning the Cypress Street bridge, that the town should "pay the future charges for keeping said bridge and approaches thereto in repair intending herein to include the expense of keeping the surface of the roadway in condition suitable for travel, together with the expense of keeping the new superstructure in repair, and apportion said charges upon the inhabitants of the town of Brookline, not intending, however, to impose upon them the entire cost of rebuilding said structure should a rebuilding thereof become necessary through its destruction by consent of the authorities and parties hereto or by some other act or by lapse of time;" and concerning the Aspinwall Avenue bridge, that said town should "pay the future charges for keeping said bridge and the approaches thereto in repair intending . . . to include the expense of keeping the surface of the roadway in condition suitable for travel, together with the expense of keeping the new superstructure in repair." They also apportioned the payment of costs of applications to the county commissioners and of hearings before the special commissioners.

The applications for jury now under consideration were tried together, and the jury made special findings which, in effect, affirmed the orders of the special commissioners except as to interest, concerning which the jury included interest at the rate of four per cent per annum instead of three per cent, as determined by the special commissioners. The report presents for decision the correctness of the rulings of the trial judge.

The underlying questions presented by the record and argued by the excepting respondents are twofold: those relating to the contention that the decrees, hereinbefore summarized, required the town to "repair and maintain and if necessary to replace the superstructure of each bridge without expense to the respondents;" and those arising under the contention that "aside from the obligation imposed upon the town by the former orders and decrees, the respondents as matter of law were not benefited by the work done upon either bridge . . . and therefore no part of the expense of such work can lawfully be assessed against them."

It is assumed, but not decided, that under the decrees entered in 1890 and 1893, there was imposed on the town the duty of maintaining and of keeping in repair the bridges constructed thereunder, and that if the necessity had arisen for their replacement, the burden of so doing would have been upon the town, apart from the proceedings instituted in 1915 which are now under consideration.

Previous to St. 1908, c. 542, § 1, amending St. 1906, c. 463, Part I, § 23, the statutory provisions relating to the construction, maintenance and repair of bridges, where highways are carried over railroad locations, did not in terms apply to cases where there was need of the "rebuilding of a highway bridge or any structural change or renewal for the purpose of strengthening or improving it;" but by that statute, it was provided that provisions, relating to alterations in public ways where they cross railroads and where an abolition of a crossing at grade is not involved, should apply to such rebuilding, change or renewal. It is urged that this statute does not affect bridges in existence at the time of its enactment, but no such limitation is found therein. Its provisions were inserted in St. 1906, c. 463, Part I, § 23, by way of amendment purporting to broaden proceedings therein authorized. While it could have no retroactive effect as to vested rights (*See* v. *Kolodny,* 227 Mass. 446, 449), it is clear that its authority was coextensive with the statute which it amended, which must be "read as if it had originally been in the amended form." *Blair* v. *Chicago,* 201 U. S. 400, 475. It was not an independent provision, but became a part of a statute giving broad authority as to alterations in crossings not at grade. The statute so amended clearly was not restricted to alterations in crossings of that nature thereafter coming into existence. Neither can the amendment be so limited. *Boston, petitioner,* 221 Mass. 468, 477, 478.

The amending statute was approved on May 26, 1908, and on the next day St. 1908, c. 552, was also approved. It is argued that the first statute cannot be considered as applying to bridges in existence at the time of its passage and constructed under previously existing provisions of law, agreements or decrees, because the later statute provided for the enforcement of obligations so created. This argument cannot prevail, however, because these independent statutes are consistent if the second is construed as relating to the

enforcement of obligations which are not modified nor terminated by some legal means.

The respondents further contend that if St. 1908, c. 542, should be held to be retroactive, it is for that reason unconstitutional. It requires no general citation of authority to maintain the proposition that the Legislature cannot recall, set aside, or reopen the decrees under which these bridges were built. *Opinion of the Justices,* 234 Mass. 612. The statute under consideration, however, does not do this. It proceeds on the basis that where a replacement or structural change or renewal is required, new proceedings are necessary. It is urged that this statute cannot control, the respondents contending that "When the railroad complied with those decrees it acquired a contractual right to require the town to perform the obligation to repair (and so to rebuild) the bridges as then constructed."

The fundamental concept involved in this question is so well and clearly settled that it is unnecessary to discuss the reasons therefor. In *Commonwealth* v. *Fitchburg Railroad,* 12 Gray, 180, 188, it was said: "The construction of a railroad is not a private enterprise. The corporation exercises the right, or the Legislature through the corporation exercises the right, to take private property for the road, on the ground that the use is a public use and the road itself a highway for the public travel. On no other ground could the exercise of the right of eminent domain by or through these corporations be upheld. The Legislature has in this view and to this end reserved to itself full power to amend or alter the charters of the railroad companies and regulate the exercise of powers under them." See St. 1849, c. 170, incorporating the Charles River Branch Railroad Company.

St. 1890, c. 428, (now embodied in St. 1906, c. 463, Part I, §§ 29 *et seq.,*) first provided for the payment of the costs of the abolition of crossings at grade by the municipality, railroad company and the Commonwealth in proportions fixed "without reference to the value of the property owned by them respectively, and without reference to the benefits which they severally receive in any particular case" (*Selectmen of Norwood* v. *New York & New England Railroad,* 161 Mass. 259, 264); and in proceedings based on findings that the "security and convenience of the public" required a change in the crossing, in *Selectmen of Norwood* v. *New York & New*

*England Railroad, supra,* at page 264, speaking with reference to the constitutionality of this statute, it was declared, with full citation of authorities: "It would have been in the power of the Legislature in granting charters to railroad corporations to provide that the railroad should not be constructed across a public highway without carrying the highway over or under the railroad, and that all the expenses of changing the grade of the way and constructing the approaches to the railroad should be borne by the railroad corporation. If, by an increase in the amount of travel at a grade crossing, or of the number of trains running over the railroad, or by changes in the manner of running trains, or of the modes of travel on a highway, or if by reason of any other change of circumstances the Legislature should deem it best for the public interest that a grade crossing should be abolished, it would be within the constitutional authority of the Legislature to forbid the continuance of it, and to require the railroad company to pay the whole, or any part, of the cost of making the change. . . . This it might do in the exercise of the police power for the protection of the people, and its decision in regard to what is right and proper in each particular case, or in any class of cases, would not be subject to revision by any other tribunal. This would not be taking from the railroad company its property or any vested right. It would be merely prescribing in the interest of the public the mode of constructing its road. Of the power to prescribe such regulations for railroad corporations, there can be no doubt. These corporations are creatures of the State engaged in doing a public business, and are bound by any reasonable statutes for the regulation of this business which the Legislature chooses to enact." In *In re Mayor & Aldermen of Northampton, petitioner,* 158 Mass. 299, 302, it is said: "As the whole subject of the crossing of highways by railroads can from time to time be regulated by the Legislature, the Legislature can, even after a final decree has been rendered, make other provisions, and require the crossings to be constructed in a manner different from that established by the decree." The same principles were fully and clearly set forth in *Boston, petitioner, supra,* where the bridge was over tidal waters, and municipal rights only were in question. The situation in such cases is analogous to that of public corporations where statutes much more drastic than that in question have been upheld. See *Opinion of the Justices, supra.*

See also *Sawyer* v. *Davis*, 136 Mass. 239, 245; *Brownell* v. *Old Colony Railroad*, 164 Mass. 29; *Providence, Fall River & Newport Steamboat Co.* v. *Fall River*, 183 Mass. 535; *County Commissioners, petitioners*, 193 Mass. 257.

The decisions of the United States Supreme Court are to the same effect. In *New York & New England Railroad* v. *Bristol*, 151 U. S. 556, 571, it is stated: "The conclusions of this court have been repeatedly announced to the effect that though railroad corporations are private corporations as distinguished from those created for municipal and governmental purposes, their uses are public, and they are invested with the right of eminent domain, only to be exercised for public purposes; that therefore they are subject to legislative control in all respects necessary to protect the public against danger, injustice, and oppression; that the State has power to exercise this control through boards of commissioners; that there is no unjust discrimination and no denial of the equal protection of the laws in regulations applicable to all railroad corporations alike; nor is there necessarily such denial nor an infringement of the obligation of contracts in the imposition upon them in particular instances of the entire expense of the performance of acts required in the public interest, in the exercise of legislative discretion; nor are they thereby deprived of property without due process of law, by statutes under which the result is ascertained in a mode suited to the nature of the case, and not merely arbitrary and capricious." See also *Munn* v. *Illinois*, 94 U. S. 113, 126; *Chicago, Burlington & Quincy Railroad* v. *Iowa*, 94 U.S. 155, 161; *Chicago, Burlington & Quincy Railroad* v. *Nebraska*, 170 U. S. 57, 73; *Chicago, Burlington & Quincy Railway* v. *Drainage Commissioners*, 200 U. S. 561; *Northern Pacific Railway* v. *Duluth*, 208 U. S. 583; *Chicago & Alton Railroad* v. *Tranbarger*, 238 U. S. 67, 78; *Chattanooga* v. *Southern Railway*, 128 Tenn. 399; *Bacon* v. *Boston & Maine Railroad*, 83 Vt. 421. The cases on which the respondents rely, (*Steamship Co.* v. *Joliffe*, 2 Wall. 450, *Nelson* v. *St. Martin's Parish*, 111 U. S. 716, *Grand Trunk Western Railway* v. *South Bend*, 227 U. S. 544, *Commonwealth* v. *Essex Co.* 13 Gray, 239,) do not modify nor control these well settled principles. It follows that St. 1908, c. 542, was not obnoxious to the provisions of either the State or Federal Constitution.

The respondents further contend that no decree can be entered

directing payment by them of any part of the cost of rebuilding these bridges because they received no benefit therefrom. This objection is not tenable. The statute does not provide that assessments under its terms must be measured by the benefit received. St. 1906, c. 463, Part I, § 25, under which the special commissioners acted, required them to determine which party should carry their decision into effect, and which should pay the charges and expenses of any alterations ordered and the future charges for keeping the bridge and approaches thereto in repair as well as the costs of application to the county commissioners and of hearings before them. They are further required to "apportion all such charges, expenses and costs between the railroad corporation, . . . the counties, cities or towns in which said crossing is situated and other cities and towns which may be specially benefited." The provision as to special benefits does not relate to the railroad, or indeed to the city or town in which the crossing is situated, but only to other cities and towns. This clearly appears from the history of the statute as well as from its grammatical construction. See Pub. Sts. c. 112, § 131; St. 1885, c. 194, § 4; St. 1887, c. 295, § 1. It never has been held that the amount apportioned to be paid by municipalities or railroad companies was necessarily based upon or limited by special benefits caused by an alteration of a grade crossing. *Selectmen of Norwood* v. *New York & New England Railroad, supra,* is an authority to the contrary. It was said in *Boston & Lowell Railroad* v. *Winchester,* 156 Mass. 217, 220: "It follows that the judge who is called upon to preside at such a trial does his whole duty when he allows the jury to hear all the pertinent competent evidence upon the questions under investigation, and instructs them upon such principles of right and justice, having a legitimate bearing upon the subject, as either party may desire him to call to their attention. It is not essential for him to lay down any specific rule of award or apportionment as governing the case, because the Legislature has seen fit not to order any apportionment or award upon any prescribed rule or theory. He may well leave the decision where the Legislature has left it, to the good sense and sound discretion of the jury itself. But he does not commit error if he sees fit to instruct them that they should bear in mind and apply any principle which must be recognized as fair and just, and applicable to the circumstances of the case in hand." Under this com-

prehensive rule it was there held that it was proper to instruct the jury that they should consider "one general rule, that the parties should pay for the benefits respectively received" with the further instruction that together the parties "must bear the whole cost." If amounts apportioned were based solely on special benefits received, it might well result that the benefits to all concerned would not equal the cost of the alteration necessary for the security or convenience of the public. See also *Kingman, petitioner,* 153 Mass. 566; *Opinion of the Justices, supra. Directors of the Boston & Maine Railroad, petitioners,* 232 Mass. 171, is not in conflict with this rule.

Moreover, it cannot be ruled as matter of law that no benefit accrued to the railroad from these changes which provided a more substantial and safe bridge over its tracks, and thus possibly prevented delay and damage which might be incident to a defect in the bridge.

The rulings requested as to the intent and understanding of the parties in 1890 were immaterial, because those decrees were not a bar to the proceedings here in controversy. In the Aspinwall Avenue bridge case, the court in effect gave the respondents' first request for rulings. The second and third requests in that case, if given, would have required the jury to pass upon all the facts found by the commissioners where in truth only those involved in special issues were in question.

The part of the charge as to the previous decrees relating to the keeping of the former bridge in repair and the expense of rebuilding the same, even if incorrect, did not injuriously affect the substantial rights of the respondents. As has been stated, under St. 1908, c. 542, the county commissioners had a right to order the construction of new bridges, and the special commissioners were authorized to apportion a part of the costs thereof on the railroad as a new proceeding unaffected by the construction of earlier decrees. On the application of the railroad for a jury to revise and determine matters of fact found by the commissioners, the effect of the old decrees was not in issue. Moreover, in connection with this exception, counsel for the railroad stated that the exception was taken "only to tie it up with . . . [his] request to the effect that as a matter of law you should instruct them that there could be nothing placed upon the railroad company."

This leaves for consideration the exceptions relating to the right of the town to interest on the amount which has been apportioned upon the railroad. Interest is not now claimed under St. 1906, c. 463, Part I, § 28, where it is provided that any amount apportioned under the statute shall bear interest after the award takes effect. The railroad is not liable to pay interest except under this statute. The voluntary act of the town in doing the work under the agreement hereinbefore stated, prior to the entry of the decrees, was not the equivalent of an obligation imposed upon it so to do, and does not bring the case within the reason of *County Commissioners, petitioners*, 143 Mass. 424. The question involved is settled adversely to the contention of the town by *Old Colony Railroad, petitioner*, 185 Mass. 160, and *County Commissioners, petitioners*, 193 Mass. 257. The jury should have been instructed as requested by the respondents, that the town was not entitled to interest on the amount expended by it, thereafter apportioned upon the railroad. This does not render a new trial necessary. Under St. 1913, c. 716, § 2, and under the terms of the report, the cases are in readiness for final decree. The exceptions must be overruled, except those relating to the payment of interest, which are sustained.

*So ordered.*